## DULUTH NATIONAL BANK *v.* KNOXVILLE FIRE INSURANCE COMPANY.

### (*Knoxville.* September 29th, 1886.)

1. FIRE INSURANCE. *Authority of agent. Alteration of policy.*

   An agent, or broker, of a fire insurance company having power and authority to deliver a policy issued by it, and to receive the premium thereon, has no power, nor is it within the *apparent* scope of his authority, to bind the company by subsequently altering the contract of insurance, by the insertion of a clause, binding the company to pay the loss to one other than the assured, although such policy was written for the assured, on the application of such agent.

   Cases cited and approved: Murphy *v.* Southern Life Ins. Co., 3 Bax., 440; Mutual Ins. Co. *v.* Hamilton, 5 Sneed, 273.

   Wood on Insurance, Sections 384, 396, 399; May on Insurance, Section 123.

2. SAME. *Application for alteration of policy.*

   An agent, receiving from the assured an application for a change in a policy of insurance, and undertaking to procure such change, is to be treated as the agent of the assured, and not of the company.

3. PLEADING AND EVIDENCE. *Want of pleading. No decree on proof alone.*

   Facts not set forth in either bill, or answer, and appearing only in the proof, will not justify nor sustain a decree.

   Cases cited and approved: Cunningham *v.* Wood, 4 Hum., 417; Bedford *v.* Williams, 5 Cold., 207; Furman *v.* North, 4 Bax., 296; Shaw *v.* Patterson, 2 Coop. Tenn. Chy., 171.

---

### FROM KNOX.

---

Appeal from the Chancery Court of Knox County. January Term, 1886. W. B. STALEY, Ch.

Duluth National Bank *v.* Knoxville Fire Insurance Company.

WEBB & MCCLUNG for Bank.

WASHBURN & TEMPLETON for Insurance Company.

LURTON, J. The bill in this cause was filed by the Duluth National Bank against the Knoxville Fire Insurance Company on a policy for $1,000 issued by said insurance company to the Oneœta Lumber Company, of Oneœta, Minnesota. The policy, upon its face, is made payable, in case of loss, "to the Duluth National Bank as their interest may appear." The insurance was upon lumber, and the property insured was destroyed by fire, and this action is to recover, under the policy, for said loss. The Oneœta Lumber Company, the party assured, is not before the Court either as complainant or defendant.

Complainants sue upon the express agreement to pay the loss to it to the extent of its interest. This interest, both from the face of the bill and from the proof, appears to be the whole amount of the loss, the policy being held by complainant as collateral security for a debt due from the lumber company much larger than the face of the policy. The defendant in its answer denies that it ever contracted to pay the loss to the Duluth National Bank; says that said bank is unknown to it, and that the words "loss, if any, payable to the Duluth National Bank as their interest may appear" were not in the policy when issued or delivered, and that same have been fraudulently interpolated since de-

livery. The facts necessary to the determination of the issue thus presented are as follows:

The Oneœta Lumber Company, being largely indebted to the Duluth National Bank, was called upon by said bank to insure the stock of lumber in their yard for their benefit against loss by fire. This they agreed to do, and they accordingly applied to the firm of Mendenhall & Haines, who were insurance agents at Duluth, Minn., for $5,000 of insurance, stating to them that they wanted the policies made payable, in case of loss, to complainant as its interest might appear. The president of the creditor bank was the Mendenhall of the firm of insurance agents, and the member of the firm who received the order for insurance and acted in the matter throughout. This witness says that his firm was unable to place the insurance in any company represented by them or in any other company represented at Duluth. In this dilemma, he wrote to the firm of Crawford, Craig & Co., insurance brokers at Chicago, Ills., to obtain the needed insurance, instructing them that the loss, if any, was to be made payable to the Duluth National Bank. Crawford, Craig & Co. were in their turn unable to place this insurance with any company represented by them. This latter firm thereupon applied to one Mrs. M. R. Smith, an insurance broker doing business in Chicago, to place with the Knoxville Fire Insurance Company a policy for them. Mrs. Smith did forward to said company, at their chief office in Knoxville, Tenn., an application for

a policy of insurance in favor of said Onecœta Lumber Company to the amount of $1,000. In the application to Mrs. Smith by Crawford, Craig & Co. nothing was said about making the loss payable to complainant, and hence in her application to the defendant corporation nothing was said as to the loss clause desired. The application was granted, and a policy for the desired amount, properly signed by the president and secretary and countersigned by the local agent at Knoxville, was sent to Mrs. Smith for delivery. This policy was received by Mrs. Smith, and was duly delivered by her to Crawford, Craig & Co. for the Onecœta Lumber Company. After its receipt by Crawford, Craig & Co., they discovered that the loss was not made payable to the Duluth National Bank, and they thereupon returned it to Mrs. Smith's office, with the request that the policy should be changed so as to be made payable as desired by the assured. This request, we are satisfied, was not made to Mrs. Smith personally, nor was she at any time requested to have the loss made payable to complainant. The circumstances seem to show that a clerk in her office was handed the policy and requested to have the desired clause inserted. On the same day, or very shortly after, says Crawford, the policy was returned to Crawford, Craig & Co. with the words "loss, if any, payable to the Duluth National Bank as their interest may appear" written upon the face of the policy. The proof shows satisfactorily that these words were not inserted by Mrs. Smith or by her

direction, and we are entirely satisfied that she never saw the policy after her original delivery of it to Crawford, Craig & Co., or even heard of the application for the insertion of the loss clause. The only proof in the record tending to show by whom these words were interpolated is proof of Crawford and his clerk that the handwriting of the disputed words is that of one Mulvany, a clerk at the time in the office of Mrs. Smith. It is also clear that no application for this change in the policy was ever made to the home office of the insurer. Crawford, Craig & Co., after the return of the policy to them, forwarded it to Mendenhall & Haines, at Duluth, and the latter firm delivered it to the Oneœta Lumber Company, and by them it was left with the complainant to secure a pre-existing debt.

Mrs. Smith was what is called by the witnesses an insurance broker. The proof shows that she had no express authority to enter into a contract of insurance. Her business was to forward to the Knoxville Insurance Company, or any other company with whom she had business relations, an application for the insurance she should be requested to obtain or place. The company reserved the right to grant or refuse such application, and if granted a policy properly filled up and signed, was forwarded to her for delivery to the applicant and collection of premium. She was paid by a commission reserved by her out of the premiums thus collected, and the balance was to be forwarded by her to the company. No express authority was ever given to her to alter

a contract of insurance by changing the payee in case of loss. If such a change was desired by assured, she could only return the policy to the company with the request that such a change should be made; and, if granted by the company, the policy, with loss clause indorsed, was returned to her for delivery to assured. The business, as thus managed by Mrs. Smith, constitutes an insurance brokerage business, and in many material respects differs from the ordinary local agencies of insurance companies. If she is to be regarded as the agent of the Knoxville Fire Insurance Company in any legal sense, her agency was limited and special, and would be confined to the receiving and forwarding of applications for insurance, the receiving and delivery of the signed and completed policies, and the collection of the premiums for insurance. She certainly was not a general agent for the defendant company. It is insisted by complainants that the insertion of the loss clause by Mulvaney, her clerk, even if done without the knowledge of Mrs. Smith, was in legal contemplation her act, and is as binding upon the company as if done by Mrs. Smith. We think that generally this would be so. "Not only is the insurer responsible for the acts of its agent, within the scope of his agency, but also for the acts of its agent's clerks, or any person to whom he delegates authority to discharge his functions for him. Of course the act must be done by some person authorized expressly or impliedly by the agent, and under such circumstances that the insurer knew, or ought to

have known, that other persons would be employed by and to act for the agent." Wood on Insurance, Section 409.

For the purpose of this case the insertion of this loss clause will be treated as in legal effect the same as if inserted by Mrs. Smith. Would the act of Mrs. Smith, in indorsing on this policy the words, "Loss, if any, payable to Duluth National Bank," bind the defendant company?

We have already seen that she had no express authority to make such indorsement. Was there such power within the apparent scope of her authority? We have seen that her agency, if it be one in contemplation of law at all, was special and limited. The course of business as conducted by her, as shown by this record, was to receive and forward to the Knoxville Fire Insurance Company, at Knoxville, Tenn., applications for insurance. It is doubtful whether, in thus receiving and forwarding such applications, she ought not to be considered as the agent of the applicant. But it is unnecessary to decide that question here. If the company granted the insurance, a completed policy was forwarded to her, to be delivered by her to the assured, and it was then her business to receive the premium. In the matter of the delivery of the policy and the receipt of premium, she must be taken, as matter of law, to have been the agent of the insurer. *Murphy* v. *Southern Life Insurance Company*, 3 Bax., 440.

Duluth National Bank *v.* Knoxville Fire Insurance Company.

We then have the case of an agent of the Knoxville Fire Insurance Company with power and authority to deliver to the assured the policy of insurance, and to receive for the company the premium thereon. Has such an agent the power, or is such authority within the *apparent* scope of her power, to bind the insurer by subsequently altering the contract of insurance so as to insert a clause binding the company to pay any loss to one other than the assured? The power to change and alter a contract is as high a power as to make a contract. To change the payee of the policy was to interest a third person in the insured property. Whatever moral risk was involved in the original contract is doubled by the agreement to pay the loss to one other than the assured. In case of sale or assignment of the insured property, the assent of the company is undoubtedly necessary before the benefit of the insurance can be assigned to the purchaser.

Upon the very face of the policy in this case is contained the printed direction that when the policy is to be used "for purposes of collateral security," that the policy must not be assigned, but made "payable, in case of loss," by *indorsement on its face.* The courts have always assented to the propositon that fire insurance is a *personal contract.*

Says Judge McKinney, in *Mutual Insurance Company* v. *Hamilton,* 5 Sneed, 273:

"The question as to the necessity of the knowledge and assent of the underwriters to the assign-

ment of a policy is very different with reference to *fire* policies from *life* and *marine* policies. The assent of the insurer to the assignment, in order to give it validity as against the office in the case of a fire policy is generally admitted; and notice of the assignment must, therefore, be given, or the assignee will not be entitled to the insurance money. The reason of this requirement in fire policies is obvious. In such cases the *personal character* of the insured for integrity and prudence is a most important consideration. In the language of the book: 'There is infused into the contract of fire insurance something in the nature of a choice of persons. The insurer might be quite willing to underwrite a policy for one person, but not for another of different character and habits. The known reputation of the assured might be an ample guarantee that he would not secretly destroy his own property with a view to recover the insurance money, while that of the assignee might furnish no such assurance.' "

The reasons thus forcibly stated as ground for avoiding a policy assigned without consent of the insurer are equally applicable in cases where it is desired that the loss shall be made payable to one other than the assured. In case of such agreement to pay the loss to a third person, the new payee becomes at once, to the extent of the interest he has in the policy, interested in the destruction of the property assured, and it operates much as an assignment of the policy. To make

a change so material as to alter the face of a
policy of insurance by indorsing an agreement to
pay the loss to one other than the original party
named as payee is to make a new contract alto-
gether. An applicant for such a change in his
policy of insurance would not, in our opinion, be
justified in assuming that such power was within
the scope of the authority of an agent who had
in the first instance forwarded his application for
insurance to the company, and whose agency he
thereby had notice was limited to delivery of pol-
icy and receipt of premium. Wood on Insurance,
Section 384; May on Insurance, Section 123.

"The burden is upon the assured to show the
act relied upon to be within the scope of the ap-
parent authority of the agent doing it. The law
makes no presumption as to the powers of an
agent. His authority must be shown, and what
the agent has done for the principal, which has
been ratified by him, is competent proof, in the
absence of other, as to the power of an agent."
Wood on Insurance, Sections 396, 399.

This record discloses no previous effort of Mrs.
Smith to bind the company by inserting this loss
clause in policies issued by this company, and the
record contains no facts or circumstances which
would justify the assumption that she had the au-
thority claimed.

It is next urged by counsel that if Mrs. Smith
did not have authority to make such indorsement
herself, that they had a right to assume that she

had forwarded the policy to the company at Knoxville, and had the indorsement made there; and that if she has practiced a fraud by making indorsement herself, that the company is bound as between it and the assured.

We are of opinion that Mrs. Smith's agency for the defendant company, so far as this particular contract of insurance was concerned, was at an end, and her authority exhausted, when she delivered the policy to the agents of the assured and collected the premium. In receiving from the assured an application for a change in the policy, and undertaking to procure such change, we think she is to be treated as the agent of the assured, and not of the insurer.

The assumption, however, that complainant had a right to assume that the policy had been sent by Mrs. Smith to the company at Knoxville, and that the indorsement of this loss clause had been made there, and by the company, is not sustained by the facts in this case. Crawford, Craig & Co. were the agents of the assured to procure this insurance, and the knowledge of their agents is notice to them. Crawford, Craig & Co. are bound to have known that this policy was not sent to Knoxville for this indorsement, because Mr. Crawford says that the policy was returned to them indorsed on the same day the application for such change was made, or very soon thereafter. We think from all the circumstances that it was returned to them the same day. If this was so,

then he knew the policy had been changed in Mrs. Smith's office. Again, this alteration was made in the handwriting of a clerk in Mrs. Smith's office, whose hand was well known to both Crawford and his clerk, who had requested the change. So that we think it more than probable that the handwriting in which the change was made gave the agents of the assured notice that it had been made in Mrs. Smith's office.

The able counsel for complainants urge, however, that if this "loss clause" is not binding upon the company, that complainants ought, nevertheless, to recover upon the policy upon the ground that the facts in the record amount to an equitable assignment of the policy by the Oneœta Lumber Company to it. The facts relied upon as amounting to an equitable assignment all appear in the *proof.* No facts are set out in either the bill or the answer which would justify such a decree. The bill is framed alone as a bill to enforce a contract of insurance, when the loss is made payable to complainant, and the suit is upon the special agreement to pay the loss to complainant. The answer makes an issue upon this loss clause.

A recovery cannot be had upon the proof alone. The facts constituting the case upon which the decree is sought not being set forth in either the bill or answer, and appearing only in the proof, will not sustain a decree. *Sheratz* v. *Nicodemus,* 7 Yer., 23; *Cunningham* v. *Woods,* 4 Hum., 417; *Bedford* v. *Williams,* 5 Cold., 207; *Furman* v.

6a

*North,* 4 Bax., 296; *Shaw* v. *Patterson,* 2 Coop. Ch., 175.

This reason is sufficient answer to this part of this case without stating other equally fatal objections to this claim of complainant to be an equitable assignee.

The decree of the Chancellor dismissing the bill of complainant was correct, and we accordingly affirm it, with costs.