GERMAN INSURANCE COMPANY OF FREEPORT, ILLINOIS, V. S. P. ROUNDS, JR.

[FILED NOVEMBER 23, 1892.]

1. **Fire Insurance:** AUTHORITY OF AGENT: AGENT'S CLERK. An agent for an insurance company, possessing the power to contract for risks, write and deliver policies, collect premiums, and make indorsements upon policies, employed a clerk and authorized him to transact the business for him in the agent's name. The clerk, in the line of his employment, wrote the policy in suit, signing the agent's name thereto, and the risk was reported to and approved by the company. Afterwards the agent indorsed upon the policy his approval of the assignment thereof by the insured to the purchaser of the property. Subsequently the clerk indorsed upon the policy, permission for additional concurrent insurance, for the discontinuance of the night watchman and watchman's clock, and any loss under the policy was made payable to the mortgagees, which indorsement was reported to the company in the agent's name, and the attention of the latter was called thereto, who acquiesced in the same. In an action on the policy it was *held*, that the act of the clerk in making the indorsement was the act of the agent and was binding upon the company to the same extent as if the same had been made by the agent personally.

2. ———: ———. A local agent of an insurance company, who has the power to make a contract of insurance, has authority to consent to additional insurance and to accept notice of a change in the risk and of the placing of incumbrances on the property, unless there is some provision in the policy to the contrary.

3. ———: ———: ASSIGNMENT OF POLICY. The indorsement upon a policy by such an agent of his approval of the assignment of a policy is binding upon the company, where the policy contains a clause that "no assignment thereof shall be valid unless the same is indorsed thereon and approved by the company, or its regular agent, in writing."

4. ———: CANCELLATION OF INSURANCE. In an action on an insurance policy which contained a stipulation reserving to the company the right to cancel the risk at any time by returning the premium *pro rata* for the unexpired term, or tendering it to the representative of the insured, it was *held*, that to rescind the policy the company must notify the assured of the cancellation, and pay or tender to him the amount of the unearned premium.

ERROR to the district court for Adams county. Tried below before GASLIN, J.

*James R. Wash, Adams & Scott,* and *I. W. Lansing,* for plaintiff in error:

Local agent is without authority to waive conditions of insurance policy after issue, when he is simply empowered to fix rates, countersign and deliver policies, and collect premiums. (*Bowlin v. Hekla Fire Ins. Co.,* 31 N. W. Rep. [Minn.], 859; *Kyte v. Commercial Union Assurance Co.,* 10 N. E. Rep. [Mass.], 518; *Hankins v. Rockford Ins. Co.,* 35 N. W. Rep. [Ill.], 34; *Strickland v. Council Bluffs Ins. Co.,* 66 Ia., 466; *Gladding v. California, etc., Ins. Co.,* 66 Cal., 6; *Enos v. Sun Ins. Co.,* 67 Id., 621; *Hamilton v. Aurora Ins. Co.,* 15 Mo. App., 59; *Leonard v. Michigan Ins. Co.,* 97 Ind., 299.) Company is not required, on being informed of insurance without its consent in another company contrary to policy, to return the premium. (*Phœnix Ins. Co. v. Stevenson,* 8 Ky., 150.)

*Tibbets, Morey & Ferris,* and *S. S. Parks, contra:*

General agents of insurance companies, authorized to contract for risks, receive and collect premiums, and deliver policies, may confer upon a clerk, or subordinate, authority to exercise the same powers. (*Duluth Nat. Bank v. Fire Ins. Co.,* 85 Tenn., 76; *Bodine v. Ins. Co.,* 51 N. Y., 117; *Eclectic Life Ins. Co. v. Fahrenkrug,* 68 Ill., 463; *Cont. Ins. Co. v. Ruckman,* 127 Ill., 364.) Notice of the intention to cancel must be given by the insurer to the insured. (*Chadbourne v. German Ins. Co.,* 31 Fed. Rep., 533; *Farnum v. Phenix Ins. Co.,* 23 Pac. Rep. [Cal.], 872.) Until proportionate part of the premium be returned or tendered to the insured, the policy remains in force. (May, Insurance [3d ed.], sec. 67; *Franklin Ins. Co. v. Massey,* 33 Pa. St., 221; *Peoria, etc., Ins. Co. v. Botto,* 47 Ill., 516;

51

*White v. Conn. Ins. Co.*, 120 Mass., 330; *Lattan v. Royal Ins. Co.*, 45 N. J. L., 453; *Home Ins. Co. v. Curtis*, 32 Mich., 402; *Albany City Ins. Co. v. Keating*, 46 Ill., 395; *Van Valkenburgh v. Lenox Ins. Co.*, 51 N. Y., 465; *Griffey v. N. Y. Cent. Ins. Co.*, 100 Id., 417.)

NORVAL, J.

This action was brought upon a fire insurance policy issued by the plaintiff in error, April 16, 1889, to the Gazette-Journal Company, of Hastings, whereby it insured said company to the amount of $1,000 on its printing outfit for the term of one year. After the issuing of the policy the property was sold to S. P. Rounds, Jr., and the policy was assigned to him on June 1, 1889. The property was destroyed by fire on the 29th day of July, 1889. The defense was that the insured had violated certain conditions of the policy, whereby the policy became void. Plaintiff below recovered a judgment for $650, and the defendant company prosecutes a petition in error to this court. It is conceded that the judgment is for the proper amount, if plaintiff below is entitled to recover anything. The policy contained, among others, the following stipulations:

"1. If the insured shall cause the building, goods, or other property, to be described in this policy otherwise than as they really are, or make any false representations as to the character of the hazard, this policy shall be void; or if the risk shall be increased from any cause whatever within the knowledge of the insured during the continuance of this policy, unless notice thereof be given to this company, and consent to such increased hazard be indorsed hereon upon the payment of proper additional premium therefor, this policy shall be of no force.

"3. No assignment of this policy shall be valid until the assignment is indorsed hereon and approved by this company, or its regular agent, in writing, and this company

reserves the right to approve the transfer or not; and in case of such assignment or transfer of this policy, or of any interest in it, without such consent, this policy shall immediately cease.

"5. When property insured by this policy, or any part thereof, shall be alienated, or incumbered, or in case of any transfer or change of title to the property insured or any part thereof, or of any interest therein, without the consent of the company indorsed hereon, or if the property hereby insured be levied upon or taken into possession or custody under any legal process, or if the title or possession be disputed in any proceedings at law or equity, or if the property be advertised for sale under a deed of trust or mortgage, or if a suit be commenced to foreclose a mortgage on the property insured, or if voluntary or involuntary proceedings in bankruptcy by or against the insured be commenced, this policy shall at once cease to be binding upon this company.

"9. The insured under this policy must obtain consent of this company for all additional insurance or policies, valid or invalid, made or taken before or after the issue of this policy on the property hereby insured, and for all changes that may be made in such additional insurance and have such consent indorsed on this policy, otherwise the insured shall not recover in case of loss; and in case of any other policies, whether made prior or subsequent to the date of this policy, the insured shall be entitled to recover of this company no greater proportion of the loss sustained than the sum hereby bears to the whole amount of policies thereon; and in case of the insured holding any other policy in this or any other company on the property insured subject to the conditions of average or co-insurance, this policy shall be subject to average and co-insurance in like manner, at the option of this company."

It is contended that the policy was invalid because the Gazette-Journal Company sold the property insured to the

defendant in error without the written consent of the insurer, and for the further reason that defendant in error took out other insurance without the written consent of the company indorsed on the policy. The policy, when issued, authorized concurrent insurance to the amount of $8,000, and policies aggregating that sum were in force at the time defendant in error purchased the property. Subsequently he placed $2,000 additional insurance. Prior to doing so, the policy in suit was taken to the office of L. M. Campbell, the local agent of the company at Hastings, for the purpose of having indorsements made thereon. Mr. Campbell being out of the city, the policy was left with one Winslow, a clerk of Mr. Campbell, to make the indorsements, who, on July 1, 1889, wrote upon the face of the policy the following: "Night watchman and watchman's clock discontinued; $10,000 total concurrent insurance permitted. Loss payable, first, to the Nebraska Loan & Trust Company; second, to Wigton & Evans. L. M. Campbell." Counsel for plaintiff in error dispute the authority of Mr. Winslow to make the indorsements. The proofs show that he had, prior to this transaction, performed considerable work for Mr. Campbell in the insurance business; that he signed Mr. Campbell's name to the policy in suit; that a copy of the indorsement in question was forwarded to the company, and it recognized the same as being the act of its agent by the secretary of the company writing Mr. Campbell in reference thereto the following letter under date of July 17, 1889:

"*L. M. Campbell Esq., Hastings, Neb.*—DEAR SIR: We have *your* indorsement, dated July 1st, on policy No. 379, Gazette-Journal Company. We say to you very frankly that we do not propose to accept *your* indorsement, and if you will consult our prohibited list you will see that we do not write personal property mortgaged or incumbered. We must ask you to immediately cancel this policy.

Please do not stop to argue the question in this instance, but let us have the policy with as little delay as possible.

"Yours truly,              WM. TREMBOR,

*"Secretary."*

While the company declined to accept the indorsement, its refusal so to do was not because Winslow signed the name of L. M. Campbell thereto, but solely on the ground that the property covered by the policy was incumbered. If Mr. Winslow could bind the insurer by signing Mr. Campbell's name to the policy in suit, it ought to be bound by the indorsement in question, to the same extent as if it had been made by Mr. Campbell personally. It was, in effect, his act. It was within the scope of the authority conferred by Campbell, and after the indorsement was made, Mr. Campbell recognized the same, and never repudiated the act. (*Duluth Nat. Bank v. Fire Ins. Co.*, 4 Am. St. Rep., 747, 85 Tenn., 76; *Bodine v. Ins. Co.*, 51 N. Y., 117; *Eclectic Life Ins. Co. v. Fahrenkrug*, 68 Ill., 463; May, Insurance, sec. 154; Wood, Insurance, sec. 409.)

It is urged that the indorsement was not binding until approved by the company, and that it, immediately after receiving notice thereof, rejected it and ordered the policy canceled. There is no provision of the policy which requires that such an indorsement should be made by any particular officer of the company, or that the policy must be sent to the home office of the company for such purpose. It only specifies that the policy shall be void when the property insured is alienated or incumbered, unless the consent of the company is indorsed on the policy. A local agent having the power to make a contract of insurance has authority to make indorsements upon a policy of insurance like the one in question, and when so made, the company will be bound thereby. If the policy was invalidated by the placing of the mortgages upon the property, why did the company order the agent to cancel the risk? By so doing, it recognized that the policy was still in force. While

the company declined to approve of the indorsement, the insured was not notified of such fact until after the fire. The indorsement was binding upon the company until the insured received notice of rejection. As no such notice was ever received by defendant in error before the loss, the incumbering of the property did not invalidate the contract.

The assignment of the policy was a sufficient approval of the transfer of the property by the Gazette-Journal Company to defendant in error. The assignment was made upon the back of the policy and was approved by Mr. Campbell, the local agent of the company. It is claimed that the secretary was the proper person to approve of the transfer, and that defendant in error had notice of that fact, inasmuch as in the blank form of approval printed on the policy, at the end of the line left for the signature of the person approving it, appears the abbreviation, "Sec'y." Doubtless the secretary of the company could have approved of the assignment in question, but we are unwilling to concede that he was the only person possessing such authority. On the blank assignment printed on the policy, appears these words: "Local agents will enter at once on the policy register all assignments *approved* by them, and report the same to the company." In addition to this it is expressly stipulated in the body of the policy that "no assignment of this policy shall be valid unless the assignment is indorsed hereon and approved by this company, or *its regular agent,* in writing," etc., thus making it clear that a regular agent of the company is empowered to approve of the transfer of the policy. The assignment in the case was made by the proper person and a report thereof was duly sent to the home office of the company. No objection or protest was made to the insured against the transfer, until after the loss in question, and it cannot now be heard to insist that the assignment was unauthorized.

Counsel for plaintiff in error insist that, inasmuch as Mr. Rounds took out other insurance on the property, the policy in suit was thereby invalidated. The indorsement made upon the policy, to which reference has already been made, was sufficient authority for the placing of the additional insurance. Written consent was given for $10,000 concurrent insurance, and the total amount covered by policies in force did not exceed that sum; so that the increased insurance was not in violation of the terms of the contract, and did not avoid the policy.

The plaintiff in error insists that the contract is void because the night watchman and the watchman's clock were discontinued. There are several answers to this contention:. First, consent for their being withdrawn was indorsed upon the policy; second, there is no evidence to show that they were in fact ever withdrawn; third,. it does not appear that either a watchman or a watchman's clock was in the building at the time the insurance was written. The policy stipulates that the increase of the risk from any cause during the continuance of the insurance invalidates the policy, unless notice thereof is given to the company and consent to such increased hazard is indorsed on the policy. It requires no argument to show that if there was no watchman or clock kept in the building when the contract of insurance was entered into, the placing of them therein afterwards, and their subsequent withdrawal, would not be increasing the risk, within the meaning of the terms of the policy. To constitute a violation of the contract the hazard must have been greater than it was when the policy was issued.

It is finally urged that the company is not liable because the contract was canceled before the fire. We do not yield assent to the proposition that the risk was canceled, within the meaning of the policy. It is true the company wrote to Mr. Campbell, its local agent at Hastings, ordering the cancellation of the policy, and the latter, before the

fire, sent the policy to the company, but no notice was ever given Mr. Rounds of the intention of the company to cancel the risk, or that it desired so to do; nor was the unearned premium ever paid or tendered to the assured. The policy was never delivered to the agent for cancellation, but had been left in his hands for the purpose of having the indorsements above referred to entered thereon, and was never returned to the insured. The third stipulation in the policy reads as follows : " This company may cancel this policy at any time by returning the premium *pro rata* for the unexpired time, or by tendering it to the representative of the insured." The company had no power or authority to terminate the insurance without complying with the above provision by refunding or tendering back a ratable proportion of the premium for the unexpired term. Since this was not done, the policy remained in force and was binding upon the company. (May, Insurance, sec. 67 ; *Franklin Ins. Co. v. Massey*, 33 Pa. St., 221 ; *Ins. Co. v. Botto*, 47 Ill., 516 ; *White v. Ins. Co.*, 120 Mass., 330 ; *Lattan v. Royal Ins. Co.*, 45 N. J. L., 453 ; *Home Ins. Co. v. Curtis*, 32 Mich., 402 ; *Albany Ins. Co. v. Keating*, 46 Ill., 395 ; *Van Valkenburgh v. Lenox Ins. Co.*, 51 N. Y., 465 ; *Griffey v. Ins. Co.*, 100 Id., 417 ; *Farnum v. Phenix Ins. Co.*, 23 Pac. Rep. [Cal.], 872.)

There being no error in the record the judgment is affirmed with costs.

AFFIRMED.

THE other judges concur.