## HOME FIRE INSURANCE COMPANY OF OMAHA V. HAMMANG BROTHERS & COMPANY.

### FILED APRIL 4, 1895. NO. 5922.

1. **Insurance:** ADDITIONAL RISKS: WRITTEN CONSENT: WAIVER: NOTICE: PRINCIPAL AND AGENT. The plaintiff in error had an insurance risk of $1,000 on the property of the defendants in error. At the same time another insurance company had a risk of $1,000 on the same property. The plaintiff in error knew of

Home Fire Ins. Co. v. Hammang.

the risk carried by the other company. The day before the risk of the plaintiff in error expired its agent requested permission of the defendants in error to write them a policy for $1,500 on the insured property to take the place of the policy about to expire. The defendants in error consented, cautioning the agent at the time to make a memorandum in writing on the new policy of the existence of the $1,000 of insurance held by the other insurance company. The agent promised to do this, and the next day wrote the policy in suit, but forgot to make the memorandum thereon of the other insurance. The agent was a banker, and after writing the policy in suit he placed it in a vault in his bank, in which the defendants in error kept their private papers, and they never saw the policy until after the loss occurred. In a suit upon the policy the insurance company defended on the ground that the policy in suit was never in force because the existence of the other insurance policy was not indorsed on the policy in suit when it was issued. The policy provided that it should be void if there was at its date any other insurance on the insured property, unless consent of the company thereto should be indorsed on the policy. *Held*, (1) That the existence of the additional insurance on the property did not of itself render the policy in suit void, but only voidable at the election of the insurer; (2) that such provision was inserted in the policy for the benefit of the insurer and was a provision which it might waive (*Hughes v. Ins. Co. of North America*, 40 Neb., 626, followed); (3) that the insurance company having written the policy in suit with full knowledge of the existence of the other policy is estopped from insisting that the policy in suit never took effect because there was indorsed thereon no memorandum of the existence of the other policy (*Phenix Ins. Co. v. Covey*, 41 Neb., 724, followed); (4) that the agent's knowledge, at the time he wrote the policy in suit, of the additional insurance on the insured property was the knowledge of the insurance company and that it was bound thereby.

2. ———: PROOFS OF LOSS: WAIVER. Another defense of the insurance company was that the insured had not furnished proofs of loss as required by the policy. A written statement of facts concerning the loss sworn to by the insured and furnished to the insurer set out in the opinion, and (1) *held* to be a sufficient compliance with the provision of the policy requiring the insured to furnish proofs of loss. *Hanover Fire Ins. Co. v. Gustin*, 40 Neb., 828, followed. (2.) The conduct of the insurer after being advised of the destruction of the insured property, set out in the opinion, and *held* that the insurer by such conduct waived the furnishing of any proof of loss whatever. *State Ins. Co. v. Schreck*,

27 Neb., 527, and *Hartford Fire Ins. Co. v. Meyer*, 30 Neb., 135, followed. (3.) That the refusal of the insurer to pay the loss, and its defense made thereto on the ground that the policy in suit was not in force at the date of the destruction of the insured property, was a waiver by the insurer of the provision of the policy requiring the insured to furnish it proofs of loss. *Dwelling House Ins. Co. v. Brewster*, 43 Neb., 528, followed.

3. ——: ——: ——. ' The provision of an insurance policy requiring proof of loss to be furnished the insurer within a specified time and in a particular manner is waived by the insurer, if, with a knowledge of the fire, its adjusting agent goes upon the ground, examines into the circumstances of the fire, takes possession of the books and invoices of the insured, and with his help makes an estimate of the amount of the loss. *Union Ins. Co. v. Barwick*, 36 Neb., 223, followed.

4. ——: ——: ——. Where the proof of loss submitted to an insurer is unsatisfactory it should return the same to the insured within a reasonable time, stating in what respect it is considered defective; and if it fails to do so it will be held to have waived any defect in such proof. *Phenix Ins. Co. v. Rad Bila Hora Lodge*, 41 Neb., 21, followed.

5. ——: CERTIFICATE OF MAGISTRATE: VALIDITY OF PROVISION : WAIVER. The insurance policy in suit contained a provision to the effect that in case a loss occurred, as a condition precedent to the right of the insured to maintain an action therefor he should furnish to the insurer a certificate of a magistrate, notary public, or commissioner of deeds, whose office was next to the place of the fire, stating that such officer had examined the circumstances of the fire, knew the character and financial condition of the insured, and believed that he had without fraud sustained loss on the insured property to an amount certified by the officer. A defense of the insurance company to the action was that no such certificate was furnished. *Held*, (1) That the insurance company by its conduct, set out in the opinion, after being advised of the loss, and by refusing to pay the loss and defending against the same on the ground that the policy in suit was not in force at the date of the loss, had waived the furnishing of such certificate, the same being part of proof of loss; (2) that the validity of any such provision was doubtful; (3) the constitution guaranties to the citizen a remedy by due course of law for any injury to himself, his property, or reputation; and it seems that the right of an insured to maintain an action in the courts of the state on an insurance contract cannot be made to depend upon his first furnishing to the insurer a certificate of a notary public

as to his moral character, financial standing, and the notary's opinion as to whether the loss resulted from the fraud of the insured, nor as to the amount of such loss.

ERROR from the district court of Washington county. Tried below before SCOTT, J.

The facts are stated by the commissioner.

*Jacob Fawcett*, for plaintiff in error:

Where a policy requires the furnishing of proofs of loss as a condition precedent to a right of recovery on the policy the proofs must be furnished. (*German Ins. Co. v. Fairbank*, 32 Neb., 757.)

The defendants in error never furnished the plaintiff in error with a certificate under the hand and seal of the magistrate, notary public, or commissioner of deeds nearest the place of the fire. There can therefore be no recovery. (*Columbian Ins. Co. v. Lawrence*, 2 Pet. [U. S.], 25; *Leadbetter v. Etna Ins. Co.*, 13 Me., 265; *Inman v. Western Fire Ins. Co.*, 12 Wend. [N.Y.], 452; *Johnson v. Phœnix Ins. Co.*, 112 Mass., 49; *Roumage v. Mechanics Fire Ins. Co.*, 1 Green [N. J. Law], 110; *Protection Ins. Co. v. Pherson*, 5 Ind., 417; *Noonan v. Hartford Fire Ins. Co.*, 21 Mo., 81; *Cornell v. Hope Ins. Co.*, 3 Martin n. s. [La.], 223; *Kerr v. British American Assurance Co.*, 32 U. C. Q. B., 569; *Cayon v. Dwelling House Ins. Co.*, 32 N. W. Rep. [Wis.], 540; *Morrow v. Waterloo County Mutual Fire Ins. Co.*, 39 U. C. Q. B., 441; *Campbell v. American Popular Life Ins. Co.*, 1 McArthur [D. C.], 246; Wood, Insurance, secs. 416, 713; *Williams v. Queens Ins. Co.*, 19 Ins. L. J. [Conn.], 26; *Lane v. St. Paul Fire & Marine Ins. Co.*, 52 N. W. Rep. [Minn.], 649.)

The policy was void by reason of the additional insurance. (*German Ins. Co. v. Heiduk*, 30 Neb., 288; *Cleaver v. Traders Ins. Co.*, 32 N. W. Rep. [Mich.], 662; *England v. Westchester Fire Ins. Co.*, 51 N. W. Rep. [Wis.],

946; *Johnson v. Dakota Fire & Marine Ins. Co.*, 45 N. W. Rep. [N. Dak.], 799; *Wilkins v. State Ins. Co.*, 45 N. W. Rep. [Minn.], 2; *Jennings v. Chenango County Mutual Ins. Co.*, 2 Denio [N. Y.], 75; *Brown v. Cattaraugus County Mutual Ins. Co.*, 18 N. Y., 385; *Chase v. Hamilton Ins. Co.*, 20 N. Y., 52; *Western Assurance Co. v. Rector*, 3 S. W. Rep. [Ky.], 415; *McNierney v. Agricultural Ins. Co.*, 48 Hun [N. Y.], 244; *Franklin Fire Ins. Co. v. Martin*, 8 Ins. L. J. [N. Y.], 134; *Smith v. Cash Mutual Fire Ins. Co.*, 24 Pa. St., 324; *Loehner v. Home Mutual Ins. Co.*, 17 Mo., 248; *Hartford Fire Ins. Co. v. Webster*, 69 Ill., 392; *Dewees v. Manhattan Ins. Co.*, 6 Vroom [N. J.], 366; *Winneshiek Ins. Co. v. Holzgraffe*, 53 Ill., 517; Ostrander, Fire Insurance, 72; *Walker v. State Ins. Co.*, 26 Pac. Rep. [Kan.], 718; *Herbst v. Lowe*, 65 Wis., 316; *Ripley v. Ætna Ins. Co.*, 30 N. Y., 136; *Glendale Mfg. Co. v. Protection Ins. Co.*, 21 Conn., 37; *Sheldon v. Hartford Fire Ins. Co.*, 22 Conn., 235; *Barrett v. Union Mutual Fire Ins. Co.*, 7 Cush. [Mass.], 180; *Insurance Co. v. Mowry*, 96 U. S., 544; *Smith v. Cash Mutual Fire Ins. Co.*, 24 Pa. St., 320; *Hartford Fire Ins. Co. v. Walsh*, 54 Ill., 168; *Higginson v. Dall*, 13 Mass., 96; *Whitney v. Haven*, 13 Mass., 172; *Weston v. Emes*, 1 Taunt. [Eng.], 115; *Swan v. Watertown Fire Ins. Co.*, 96 Pa. St., 42; *Greenwood v. New York Life Ins. Co.*, 27 Mo. App., 411.)

*W. S. Cook* and *D. Z. Mummert, contra:*

The company, by sending its agent to adjust the loss, calling for bills and additional evidence, waived proofs of loss and certificate of notary. (*Cannon v. Home Ins. Co. of New York*, 53 Wis., 585; *Brown v. State Ins. Co.*, 74 Ia., 428; *Oshkosh Gas Light Co. v. Germania Fire Ins. Co.*, 71 Wis., 454; *Zielke v. London Assurance Corporation*, 64 Wis., 442; *Green v. Des Moines Fire Ins. Co.*, 50 N. W. Rep. [Ia.], 558; *Bach v. State Ins. Co.*, 64 Ia., 595; *Merchants Ins. Co. v. Hollhaus*, 43 Mich., 423; *Bromberg v. Minne-*

sota *Fire Association*, 45 Minn., 318; *Miller v. Hartford Fire Ins. Co.*, 70 Ia., 704; *Harriman v. Queen Ins. Co.*, 49 Wis., 71; *Commercial Union Assurance Co. v. Hocking*, 115 Pa. St., 407; *Union Ins. Co. v. Barwick*, 36 Neb., 223; *German-American Ins. Co. v. Barwick*, 36 Neb., 223; *Billings v. German Ins. Co.*, 34 Neb., 502.)

Knowledge by the agent of the existence of the additional insurance is knowledge of the plaintiff, and the failure to make objections is a complete waiver of any objection that the additional insurance was not indorsed upon the policy. (*Copeland v. Dwelling House Ins. Co.*, 43 N. W. Rep. [Mich.], 991; *Tubbs v. Dwelling House Ins. Co.*, 48 N. W. Rep. [Mich.], 296; *Kitchen v. Hartford Fire Ins. Co.*, 23 N. W. Rep. [Mich.], 616; *Brandup v. St. Paul Fire & Marine Ins. Co.*, 7 N. W. Rep. [Minn.], 735; *Bennett v. Council Bluffs Ins. Co.*, 31 N. W. Rep. [Ia.], 948; *Cleaver v. Traders Ins. Co.*, 39 N. W. Rep. [Mich.], 571; *Barnes v. Hekla Fire Ins. Co.*, 39 N. W. Rep. [Ia.], 122; *Hamilton v. Home Ins. Co.*, 7 S. W. Rep. [Mo.], 261; *Kausel v. Minnesota Farmers Mutual Fire Association*, 16 N. W. Rep. [Minn.], 430; *Reynolds v. Iowa & Nebraska Ins. Co.*, 46 N. W. Rep. [Ia.], 659; *Crouse v. Hartford Fire Ins. Co.*, 44 N. W. Rep. [Mich.], 496; *Gristock v. Royal Ins. Co.*, 47 N. W. Rep. [Mich.], 549; *Reiner v. Dwelling House Ins. Co.*, 42 N. W. Rep. [Wis.], 208; *Donnelly v. Cedar Rapids Ins. Co.*, 28 N. W. Rep. [Ia.], 607; *Temmink v. Metropolitan Life Ins. Co.*, 40 N. W. Rep. [Mich.], 469; *Eggleston v. Council Bluffs Ins. Co.*, 21 N. W. Rep. [Ia.], 652; *Brumfield v. Union Ins. Co.*, 7 S. W. Rep. [Ky.], 893; *Michigan Shingle Co. v. State Investment & Ins. Co.*, 53 N. W. Rep. [Mich.], 545; *Ins. Co. of North America v. McLimans*, 28 Neb., 653.)

*W. C. Walton*, also for defendant in error.

Ragan, C.

Hammang Bros. & Co. brought this suit in the district court of Washington county against the Home Fire Insurance Company of Omaha, Nebraska, (hereinafter called the "Insurance Company,") to recover the value of certain merchandise which they alleged they owned, which had been insured against loss or damage by fire by the Insurance Company, and which merchandise had been destroyed by fire. Hammang Bros. & Co. had a verdict and judgment, and the Insurance Company brings the same here for review. There is no contention here but that the policy sued upon was issued, that the premium was paid, and that the property was destroyed by fire; nor is there any claim made that the actual loss sustained by Hammang Bros. & Co. was not greater than the amount of the insurance; nor is it claimed that the fire resulted from any fraud or neglect on the part of the insured. To reverse the judgment of the district court counsel for the Insurance Company has argued four points here, which we notice as follows:

1. One of the defenses the Insurance Company interposed to this action in the district court was that the insured did not furnish to the Insurance Company proofs of loss as required by the insurance contract. The policy provided : "When a fire has occurred, damaging the property hereby insured, the assured shall give immediate notice and render a particular account of such loss, signed and sworn to by them; if there is other insurance, shall give a detailed account of same, with copies of the written portions of all policies; shall also give the actual cash value of the property, their interest therein, the interest of all other parties therein, if any, giving their names; the amount of the loss or damage; for what purpose and by whom the building insured or containing the property insured, and the several parts thereof, were used; when and how the

fire originated; and an itemized estimate of value of the property destroyed." The fire occurred on the 31st day of October, 1890. On the 25th day of November, 1890, the assured made a statement in writing, swore to the same before a justice of the peace, and transmitted it to the Insurance Company. This written statement or proof of loss set out that a fire had occurred on the 31st of October, 1890, destroying and injuring the property covered by the policy in suit; that the date of such policy was the 14th of June, 1890; that the policy had been issued to Hammang Bros. & Co.; that the amount of the insurance was $1,500; that the property damaged and destroyed consisted of hardware, stoves, tinware, and other articles usually kept in a hardware store; that the loss was payable to Hammang Bros. & Co.; that the Omaha Fire Insurance Company of Omaha, Nebraska, had also a policy of $1,000 on the destroyed property; that the goods saved were well protected; that an inventory was being made of the goods saved; that the books of the firm of Hammang Bros. & Co. had been saved; that the fire which destroyed the insured property was communicated to the building in which it was situate from a fire in a livery barn across an alley west of the store of Hammang Bros. & Co.; that an inventory of the stock of Hammang Bros. & Co. had been taken on January 1, 1890; that the condition of the insured property saved was fairly good; and that there had been no change in the risk or its external exposures since the policy was issued. It will be seen that this proof of loss furnished by Hammang Bros. & Co. to the Insurance Company is not a strict compliance with the requirements of the policy, but we think it is a substantial compliance with that provision of the insurance contract. Technical accuracy in making out a proof of loss is not essential. The proof of loss is sufficient if it shows upon its face that the insured made an honest effort to comply with the requirement of the insurance contract. (*Continental Ins.*

*Co. v. Lippold*, 3 Neb., 391; *German-American Ins. Co. v. Etherton*, 25 Neb., 505; *Hanover Fire Ins. Co. v. Gustin*, 40 Neb., 828.)

The insured property was situate in the town of Arlington, and the Insurance Company was domiciled in the city of Omaha. Immediately after the receipt by the Insurance Company of the proof of loss hereinbefore mentioned the Insurance Company sent to Arlington its adjuster. This adjuster remained there several days inquiring into the circumstances of the fire and the amount of the loss. He took possession of the books and invoices of the insured, and estimated the value of the property saved from the fire, the amount of stock on hand at the time the fire occurred, and the amount of the loss or damage which the insured had sustained by reason of the fire, and offered to pay the insured $900 in settlement of their loss. The Insurance Company, when it received the paper called a "proof of loss," hereinbefore referred to, retained possession of the same, made no complaints to the insured that the proofs furnished were insufficient or defective; nor did it request the insured to furnish any other or different proof of loss at any time or place. The Insurance Company then by its conduct waived the insufficiency of the proofs of loss furnished it by the insured, and in fact waived any proof of loss whatever. For the purpose of settling—if such a question can ever be settled—that the clause in an insurance contract requiring the insured in case of the destruction of the insured property to furnish the insurer proofs of loss is inserted in the insurance contract for the benefit of the insurer, and the furnishing of such proofs of loss may be waived by such conduct of the insurer, having knowledge of the loss, as establishes an intention on his part to waive the furnishing of such proofs of loss, we collate some of the authorities in point.

In *State Ins. Co. v. Schreck*, 27 Neb., 527, *Hartford Fire Ins. Co. v. Meyer*, 30 Neb., 135, and *St. Paul Fire & Marine*

*Ins. Co. v. Gotthelf*, 35 Neb., 351, it was held: "Provisions of an insurance policy covering a stock of goods for notice of loss within a specified time and in a particular manner will be held to have been waived by the insurer where, with knowledge of the loss of part of said stock by fire, it, by its adjusting agent, demands and obtains possession of the remainder of the goods and books of the insured and is engaged several days, with the help of the latter, in ascertaining the amount of the loss."

In *Union Ins. Co. of California v. Barwick*, 36 Neb., 223, and *Western Home Ins. Co. v. Richardson*, 40 Neb., 1, it was held: "In case the preliminary proof of loss submitted to the company is unsatisfactory, it should return the same to the insured within a reasonable time, stating in what respect it is considered defective, and if it fails to do so, but rejects such proof on the ground that the same was not furnished in proper time, it cannot afterwards avail itself of the insufficiency of such preliminary proof."

See *Phœnix Ins. Co. v. Rad Bila Hora Lodge*, 41 Neb., 21; *Harriman v. Queen Ins. Co. of London*, 5 N. W. Rep. [Wis.], 12; *Cannon v. Home Ins. Co. of New York*, 11 N. W. Rep. [Wis.], 11; *Zielke v. London Assurance Corporation*, 25 N. W. Rep. [Wis.], 436; *Bromberg v. Minnesota Fire Association*, 47 N. W. Rep. [Minn.], 975; *Mercantile Ins. Co. v. Holthouse*, 5 N. W. Rep. [Mich.], 642; *Green v. Des Moines Fire Ins. Co.*, 50 N. W. Rep. [Ia.], 558; *Commercial Union Assurance Co. v. Hocking*, 8 Atl. Rep. [Pa.], 589. In this last case the court held: "An insurance company which receives proofs of loss when offered, refers them to its adjuster, and retains them without objection or complaint for five months, will be held to waive a compliance with the conditions of the policy even though the proofs were not made within the time nor in the form required by the policy."

But, as we shall see hereafter, the Insurance Company refused to pay this loss and defended this action on the

ground that the policy in suit was not in force at the time the loss occurred. This, then, constituted another waiver on the part of the Insurance Company of the furnishing to it of proofs of loss by the insured. "The absolute denial by the insurer of all liability on the ground that the policy was not in force at the time of the loss is a waiver of the preliminary proofs of loss required by the policy." (*Phenix Ins. Co. v. Bachelder*, 32 Neb., 490; *Western Home Ins. Co. v. Richardson*, 40 Neb., 1; *Omaha Fire Ins. Co. v. Dierks*, 43 Neb., 473; *Dwelling House Ins. Co. v. Brewster*, 43 Neb., 528.)

2. Another defense interposed in the court below and argued here is this: The policy, as already seen, provided that in case a loss of the insured property should occur that the insured should furnish the Insurance Company with proofs of loss and "shall also produce a certificate, under the hand and seal of a magistrate, notary public, or commissioner of deeds nearest to place of fire,   *   *.   * stating that he has examined the circumstances attending the loss, knows the character and condition of the assured, and firmly believes that the assured has without fraud sustained loss on the property insured to the amount which he shall so certify." The insured furnished no such certificate as the one required by this provision; and the argument is that therefore the insured could not recover. Of this defense we have this to say: (1.) That it was really included in the defense of the failure of the insured to furnish the Insurance Company proofs of loss. All that has been said above in reference to that defense applies to this defense and argument. (2.) We very seriously doubt if any such provision in the contract can be enforced. Here the argument of the Insurance Company in effect is that we insured your property and agreed with you that in case it should be lost and damaged that we would pay the amount of such loss or damage. You have paid us a premium for carrying this risk, and the property has been destroyed without

fault on your part; but you have not furnished us the certificate of an officer whose office is next to the place where the fire occurred, certifying that he has examined the circumstances attending the loss, knows your character and financial condition, and that he believes you have sustained loss without fault on your part; and, until you furnish such certificate, you cannot maintain a suit in the courts of the state on this contract. The right of a citizen to maintain an action in the courts of this state is fixed by the constitution and the laws thereof, and we do not think that right can be made to depend upon the whim of a justice of the peace or a notary public. Suppose that this justice of the peace should be the enemy of the insured, or for any other reason should refuse to furnish the insured a certificate of good moral character and should refuse to examine into the circumstances attending the loss and the financial condition of the insured. How is the insured to compel the making of this certificate? We are aware that the supreme court of the state of Minnesota in *Lane v. St. Paul Fire & Marine Ins. Co.*, 52 N. W. Rep., 649, sustained a provision like the one under consideration, and held that the furnishing of the certificate was a condition precedent to the right of the insured to recover, and that his inability to furnish the certificate because of the refusal of the magistrate to give it afforded no excuse for the insured's failure. But it is to be remembered that in that state the legislature prescribes the terms and conditions of all fire insurance policies, and such was the policy considered in the case last cited. Furthermore, the constitution of this state provides: "All courts shall be open, and every person, for any injury done him in his lands, goods, person or reputation, shall have a remedy by due course of law and justice administered without denial or delay." (Constitution, sec. 13, art. 1.) It may be that the legislature has the authority to provide that before an insured can maintain an action in the courts to recover for a

41

loss on an insurance policy he must procure the certificate of a magistrate next to where the loss occured that he has examined into the conditions of the loss and believes that it occurred without the fault of the insured, that the insured is of good moral character, and that he is acquainted with his financial condition. But we shall hesitate a great while before we uphold any such provision as this in the absence of express legislation requiring it. We are also aware that provisions similar to this have been considered and upheld in other courts; and it is said that the rule announced in the Minnesota case is sustained by a line of authorities reaching back to an early date in the English courts. However this may be, and however venerable such a rule may be, however much it may be sanctified by authority and covered with the dust and cobwebs of ages, we decline to be bound by it.

3. The policy provided it should be void "if there is now or shall hereafter be obtained any other insurance, whether valid or not, on the said property or any part thereof," unless the consent of the company to such other insurance was indorsed on the policy. Another defense of the Insurance Company in the district court was that at the time of the issuance of the policy in suit the insured had a policy of one thousand dollars upon the insured property issued by the Omaha Fire Insurance Company, and that the existence of such latter policy, or the consent of the Insurance Company thereto, was not indorsed in writing on the policy in suit. Hammang Bros. & Co. in reply admitted the facts stated as a defense and pleaded in avoidance thereof, or as an estoppel against the Insurance Company, that the Insurance Company wrote the policy in suit with actual knowledge of the existence of the policy held by them in the Omaha Fire Insurance Company. The evidence shows that prior to the 14th of June, 1890, one Badger, a banker in Arlington, was the agent of the Insurance Company; that a man named Cook, in said town

of Arlington, was the agent of the Omaha Fire Insurance
Company; that for the year immediately preceding June
14, 1890, the Omaha Fire Insurance Company had a risk
upon the property of the insured for one thousand dollars;
that about the 13th of June, 1890, Mr. Badger went to
Hammang Bros. & Co. and said to them that their policy
in the Insurance Company would expire by the 14th of
June and asked them to permit him to write them a policy
for two thousand dollars on their stock of merchandise.
The insured responded that they were carrying two thou-
sand dollars of insurance then, one thousand in the Omaha
Fire Insurance Company and one thousand dollars in
Badger's company (the Insurance Company).   Mr. Badger
replied that he knew that, but that the insured, considering
the amount of stock they carried, should carry more than
two thousand, and asked them if they would not allow him
to write a policy in his company to take the place of the
one it carried, as that would expire by the 14th of June,
for fifteen hundred dollars, thus making the total amount
of insurance of the insured on their stock twenty-five hun-
dred dollars.   The insured demurred to this somewhat on
the grounds that the rate was too high, but finally they
authorized Badger to write on the 14th of June, 1890, the
policy in suit for fifteen hundred dollars in the Insurance
Company to take the place of the one the Insurance Com-
pany was carrying for one thousand dollars, and which
would expire by the 14th of June.   They also instructed
Mr. Badger to make a memorandum in writing on the fif-
teen hundred dollar policy which he was about to issue to
the effect that they had a thousand dollars of insurance at
that time in the Omaha Fire Insurance Company on the
same stock of merchandise.   Mr. Badger promised to do
this, and says in his testimony that the only reason he did not
it was because he forgot it.   On the 14th day of June, Badger
wrote the policy in suit, and on that date, or very shortly
after that, wrote a letter to the Insurance Company, his

principal, stating to it that he had written a policy for Hammang Bros. & Co. on the 14th of June, 1890, for a year for fifteen hundred dollars to take the place of their policy of one thousand dollars which expired on that date, and in this letter he informed the Insurance Company, his principal, that the Omaha Fire Insurance Company had a policy of one thousand dollars on the same property. The policy in suit, after it was written by Mr. Badger, was placed by him in a vault in his bank, where it appears that Hammang Bros. & Co. kept their private papers, and they, nor either of them, ever saw the policy until after the fire occurred out of which this suit arose. Badger collected from Hammang Bros. & Co. the premium for the policy in suit and duly remitted it to the Insurance Company. It appears also from the evidence that Badger, before he wrote the policy in suit, and before talking with Hammang Bros. & Co. of writing it, knew through Mr. Cook, the agent of the Omaha Fire Insurance Company, that that company had a policy of one thousand dollars on the same property insured by the policy here.

The argument of counsel for the Insurance Company here is not that Hammang Bros. & Co. concealed from the Insurance Company the existence of the policy in the Omaha Fire Insurance Company, not that Badger made any inquiries as to any other insurance outstanding on the property and that Hammang Bros. & Co. answered falsely such inquiries or kept silent, but the entire defense and the argument here are rested upon the proposition that because no memorandum in writing of the existence of the policy in the Omaha Fire Insurance Company was indorsed on the policy in suit, that the latter never was in force. If Hammang Bros. & Co. had themselves violated the provision of the policy in reference to additional insurance on the property such violation would not of itself have rendered the policy in suit absolutely void, but only voidable at the election of the insurer. Such a provision is

inserted in insurance policies for the benefit of the insurer
and is a provision which it may waive. (*Hughes v. Ins. Co.*
*of North America,* 40 Neb., 626.) But the evidence quoted
above shows that the insured have not violated any provi-
sion of the policy with reference to other insurance than
that in suit.. The insured did not write the policy in suit.
It was not their business to write it. They fully and
fairly disclosed to the agent of the Insurance Company—
what he already knew—the existence of the policy in the
Omaha Fire Insurance Company, and requested this agent
to make a memorandum in writing on the policy in suit of
the existence of the other policy. The Insurance Com-
pany's agent intended to do this, and it must be said in
justice to Mr. Badger that his failure to make this memo-
randum seems to have been the result of forgetfulness.
Here, then, was actual knowledge of the additional insur-
ance complained of in the possession of the Insurance
Company's agent when he solicited and wrote the insur-
ance policy in suit. This knowledge of the agent was the
knowledge of the company. Knowledge on the part of
the agent of an insurance company, authorized to issue its
policies, of facts which render the contract voidable at the
insurer's option, is knowledge of the company. (*Gans v.*
*St. Paul Fire & Marine Ins. Co.,* 43 Wis., 108; *Bennett*
*v. Council Bluffs Ins. Co.,* 31 N. W. Rep. [Ia.], 948.)
This precise question was before this court in *Phenix Ins.*
*Co. v. Covey,* 41 Neb., 724. RYAN, C., writing the opinion
of the court, said : " Where an insurance agent, with au-
thority to receive premiums and issue policies, exercises such
authority with knowledge of the existence of concurrent in-
surance on the premises, the company is estopped, after a
loss, to insist that the policy is void because consent to
such concurrent insurance was not given in writing."
This case is decisive of the question under consideration.
We are satisfied with the rule as there announced, and ad-
here to it. That it states the rule correctly, we have no

doubt, and that it is sustained by the authorities see, among others, the following cases: *State Ins. Co. v. Jordan*, 29 Neb., 514; *Billings v. German Ins. Co.*, 34 Neb., 502; *German Ins. Co. v. Penrod*, 35 Neb., 273; *German Ins. Co. v. Rounds*, 35 Neb., 752; *McEwen v. Montgomery County Mutual Ins. Co.*, 5 Hill [N. Y.], 101; *American Ins. Co. v. Gallatin*, 3 N. W. Rep. [Wis.], 772; *Oshkosh Gas Light Co. v. Germania Fire Ins. Co.*, 37 N. W. Rep. [Wis.], 819; *Reiner v. Dwelling House Ins. Co.*, 42 N. W. Rep. [Wis.], 208; *Vankirk v. Citizens Ins. Co.*, 48 N. W. Rep. [Wis.], 798; *Kitchen v. Hartford Fire Ins. Co.*, 23 N. W. Rep., [Mich.], 616. In this last case the court said: "An insurance company is bound by the acts or conduct of an agent who has power to solicit insurance, make examination and survey of the premises, take applications and forward them to the home or branch office, deliver policies, and collect premiums; and when a party insured notifies such agent of his intention to take additional insurance, and when he has obtained such insurance requests him to inform his company of that fact, the company cannot, after a loss, hold the policy issued by it void because its written consent to the taking of such additional insurance was not indorsed on the policy, as provided therein." (*Crouse v. Hartford Fire Ins. Co.*, 44 N. W. Rep. [Mich.], 496; *Gristock v. Royal Ins. Co.*, 47 N. W. Rep. [Mich.], 549; *Cleaver v. Traders Ins. Co.*, 39 N. W. Rep. [Mich.], 571; *Temmink v. Metropolitan Life Ins. Co.*, 40 N. W. Rep. [Mich.], 469; *Copeland v. Dwelling House Ins. Co.*, 43 N. W. Rep. [Mich.], 991 ; *Tubbs v. Dwelling House Ins. Co.*, 48 N. W. Rep. [Mich.], 296; *Brandup v. St. Paul Fire & Marine Ins. Co.*, 7 N. W. Rep. [Minn.], 735; *Kansel v. Minnesota Farmers Mutual Fire Ins. Association*, 16 N. W. Rep. [Minn.], 430; *Eggleston v. Council Bluffs Ins. Co.*, 21 N. W. Rep. [Ia.], 652; *Donnelly v. Cedar Rapids Ins. Co.*, 28 N. W. Rep. [Ia.], 607; *Miller v. Hartford Fire Ins. Co.*, 29 N. W. Rep. [Ia.], 411; *Bennett v. Council Bluffs Ins. Co.*, 31

N. W. Rep. [Ia.], 948; *Mattocks v. Des Moines Ins. Co.*, 37 N. W. Rep. [Ia.], 174; *Brown v. State Ins. Co.*, 38 N. W. Rep. [Ia.], 135; *Barnes v. Hekla Fire Ins. Co.*, 39 N. W. Rep. [Ia.], 122; *Reynolds v. Iowa & Nebraska Ins. Co.*, 46 N. W. Rep. [Ia.], 659; *Hamilton v. Home Ins. Co.*, 7 S. W. Rep. [Mo.], 261; *Brumfield v. Union Ins. Co.*, 7 S. W. Rep. [Ky.], 893.)

4. But it is argued that the evidence of Mr. Badger, the Insurance Company's agent, and the evidence of the members composing the firm of Hammang Bros. & Co., showing that at the time and before the issuance of the policy in suit that Badger knew of the existence of the policy in the Omaha Fire Insurance Company, and agreed to and did write the policy sued on here, and agreed to make a memorandum in writing thereon of the existence of such Omaha Fire Insurance Company's policy, was incompetent, and that the court erred in admitting it. It is said that the effect of this evidence was to vary and contradict the terms of a written contract, to-wit, the policy between the parties. We think this evidence tended to prove the plea of estoppel set up by the insured to the defense of other insurance on the property made by the Insurance Company was competent and material, and we do not think the effect of the evidence was such as counsel contend.

5. The final assignment of error is that the court erred in not sustaining the application of the Insurance Company for a new trial on the ground of accident and surprise. We cannot consider this assignment, for the reason that the affidavits used in the district court in support of this ground of the motion for a new trial are not preserved in the bill of exceptions.

The judgment of the district court was right. It is accordingly in all things

AFFIRMED.

NORVAL, C. J.    I concur in the result.