## MEIGS v. LONDON ASSUR. CO.

(Circuit Court, E. D. Pennsylvania. January 11, 1904.)

No. 72.

1. FIRE INSURANCE—SCOPE OF POLICY—ADDITION TO BUILDING.

An addition to a main building of a school, adjoining it and connecting therewith, is covered by a prior policy on the main building granting the privilege to make additions, the policy to cover the same.

2. SAME—CONTRIBUTION BETWEEN INSURERS.

Policies on a main building, which were also to cover additions, provided that the companies should not be liable for a greater proportion of any loss than the amount insured should bear to the whole insurance covering the property. Afterwards an addition was built and specifically insured by policies containing the same clause. Held, that the latter policies were entitled to contribution from the earlier policies as to a loss on the addition.

3. SAME—DOUBLE INSURANCE—WAIVER BY AGENT—MATERIALITY.

Where it is conceded on the trial of an action on an insurance policy that it permitted other insurance, conversations with the agent at the time of issuing it, tending to show a waiver of the clause forbidding other insurance, are immaterial.

4. SAME—SUBSEQUENT DECLARATION OF AGENT.

Since the rights of parties to an insurance policy relative to double insurance and to building an addition to the premises could not be affected by subsequent expressions of the agent's opinion as to the necessity of indorsing permission therefor on the policy, such opinion is inadmissible.

5. SAME—PROVISION AGAINST WAIVER.

Where an insurance policy provides that no agent shall have power to waive any provision or condition thereof except such as by its terms may be the subject of agreement indorsed thereon, and that as to such provisions no agent shall have power to waive or be deemed to have waived them unless the waiver is written upon or attached to the policy, etc., the agent cannot, by conduct or an oral statement, waive any of the policy's provisions.

6. COURTS—BINDING FORCE OF STATE DECISION—COMMERCIAL LAW—CONTRIBUTION BETWEEN INSURERS.

The question whether a case of double insurance is made out, so as to require contribution between the insurers, is one of general commercial law, the determination of which by the Supreme Court of the state where the question arose is not binding on the federal courts of that jurisdiction.

¶ 3. Waiver of condition against other insurance, see note to United Firemen's Ins. Co. v. Thomas, 27 C. C. A. 46.

¶ 5. See Insurance, vol. 28, Cent. Dig. § 1020.

At Law.   Trial by the court without a jury.

Larzelere, Gibson & Fox and R. C. Dale, for plaintiff.

Montgomery Evans and George Wharton Pepper, for defendant.

J. B. McPHERSON, District Judge.   The facts are not in dispute, and I find them to be as follows:

(1) The plaintiff is the owner of a group of buildings at Potts-town, Pa., which he uses for a boys' boarding school.   It is well and widely known as the "Hill School."   On February 17, 1900, he in-sured the main building, consisting of several wings or attached buildings, and also its contents, for three years, in 10 fire insurance companies, the policies insuring $130,000 on the building, which was its full value, and $50,000 on its contents. ' These policies will be spoken of as "Class A."   They contained the following provisions:

"Privilege granted to make additions, alterations and repairs, and this pol-icy to cover on and in same; to use the electric current; for other insurance without notice, and for the building hereby insured to be unoccupied a por-tion of each year, as is customary with colleges, but to be in charge of a responsible person living on the premises."

"If at the time of the fire the whole amount of insurance on the property covered by each separate item of this policy on property described in such item shall be less than the actual cash value thereof, this company shall, in case of loss or damage, be liable for only such portion of such loss or damage as the amount insured under said item shall bear to the said actual cash value of the property covered by such item."

"This company shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by an expense of removal from premises endangered by fire, than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent in-surers, covering such property."

"No officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent, or repre-sentative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or at-tached."

(2) Afterwards the plaintiff built an addition, called the "east wing," which was not in contemplation when the insurance of February 17th was effected.   It cost $60,000, and on October 27, 1900, he placed specific insurance on the addition and its contents in 13 com-panies, the defendant being one; the policies insuring $60,000 on the building and $7,500 on its contents.   These policies will be spoken of as "Class B."   They describe the building insured as "an addition to the Hill School   *   *   *   adjoining and communicating with the main building and forming part of the Hill School."   These policies contained the following provisions:

"Privilege to make additions, alterations and repairs, and this insurance shall cover the same; to use oil, gas and electricity for lighting purposes."

"Other insurance permitted."   (This is inserted by means of a rubber stamp.)

"It is provided that if at the time of fire the whole amount of insurance on the property covered by this policy shall be less than eighty per cent. of

the actual cash value thereof, this company shall, in case of loss or damage, be liable for only such portion of such loss or damage as the amount insured by this policy shall bear to the said eighty per cent. of actual cash value of such property."

"This company shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by any expense of removal from premises endangered by fire, than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property.   *   *   *"

"This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."  (This clause is printed in the body of the policy.)

"No officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto, and as to such provisions and conditions, no officer, agent, or representative shall have such power or be deemed or held to have waived such conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

Both classes of policies are made part of this finding with the same effect as if they had been set out in full.

(3) On December 29, 1901, a disastrous fire occurred at the school, and the losses suffered by the plaintiff were adjusted at the following sums:

Loss on east wing building (the addition)........................ $26,668.50
Loss on contents in east wing (this includes a loss of $4,500 on
    students' clothes) ......................................... 13,250.00
Loss on building other than east wing........................... 1,815.65
Loss on contents in building other than east wing.............. 2,332.30

(4) At the trial the defendant waived any defense under the printed clause in its policy providing against other insurance without its consent.

(5) Mr. Shaner, the agent by whom Class B policies were placed, knew that there was existing insurance on the main building. He was so informed by the plaintiff, but the amount of the existing policies was not stated, and the contents and terms of the Class A policies were not definitely made known to him. In the application for the $67,500 insurance, the inquiry, "What other insurance, and in what companies?" was not answered. Both the plaintiff and Mr. Shaner treated the insurance of $67,500 as specific insurance on the east wing and its contents, and the agent, when he wrote the policies, supposed that the Class A policies did not cover the east wing. The plaintiff also notified Mr. Coleman, the agent who placed the Class A policies, that he was about to take out specific insurance on the addition, and inquired whether such insurance would require any indorsement upon the Class A policies. Mr. Coleman informed the plaintiff that indorsement was unnecessary, as the Class A policies themselves granted the privilege to make additions and to take out other insurance.

The following answers to the defendant's requests for findings of law also answer the plaintiff's requests, and therefore these need not be specifically set out:

(1) The east wing was an addition, within the meaning of that word as used in the Class A policies under the privilege granted to make additions, alterations, and repairs, and therefore, as soon as the east wing was built, these policies covered the wing and its contents.

(2) To build the addition was a privilege, but to have it covered by the Class A policies when built was a right, and this (in the absence of an agreement to the contrary) gave to the specific policies, when written, a clear right to hold the Class A policies for contribution to the loss on the east wing and to its contents other than pupils' clothing.

(3) The contract as contained in the Class A policies was never discharged, altered, or amended by any subsequent agreement, and these policies must therefore contribute their pro rata share to the loss on the east wing and on its contents other than pupils' clothing.

(4) The policy sued on contains the entire and the only contract between the defendant and the plaintiff, and each of the Class A policies contains the entire and the only contract between the plaintiff and the companies issuing these policies respectively. The conversations between Mr. Shaner and the plaintiff and between Mr. Coleman and the plaintiff are not relevant to any issue raised in this case.

(5) Mr. Shaner had no authority to waive by conduct, or by any oral statement, the pro rata contribution clause in the defendant's policy; and Mr. Coleman had no authority to alter or abandon by contract or by oral declarations any part of the contract contained in the Class A policies.

In the foregoing answers I have decided the principal question in the case, namely, whether the Class A policies are bound to bear part of the loss upon the east wing and its contents other than pupils' clothing. A few words may be added to state my reasons for so deciding. The Supreme Court of Pennsylvania has had the same question before it recently in a suit growing out of this very loss that was tried in a state court, and has come to the opposite conclusion. Meigs v. Ins. Co., 205 Pa. 378, 54 Atl. 1053, Chief Justice Mitchell dissenting. The decision follows the view concerning double insurance that prevails in this state, the rule being thus expressed in the opinion of the court:

"When two policies insure the same property, but one of them covers other property also, without specifying how much of the insurance applies to each property, a case of double insurance is not presented, and the policies do not prorate."

The rule that prevails more generally, I think, is stated in the dissenting opinion:

"Double insurance is, or ought to be, wherever there are two separate insurers liable for the same loss. The fact that one policy covers more property or wider risks than the other does not prevent the insurance being double on the subjects covered by both."

This is the law of the federal courts, and, while I regret to differ from the view of this controversy taken by the Supreme Court of Pennsylvania, I am bound by the decisions of the appellate tribunals

of the United States. The question is one of general commercial law, upon which the federal courts are at liberty to entertain an independent opinion, and such opinion must furnish the rule for my decision. In Page v. Sun Ins. Office, 74 Fed. 203, 20 C. C. A. 397, 33 L. R. A. 249, decided by the Circuit Court of Appeals for the Eighth Circuit, the facts were these: The plaintiff's lumber was piled upon two separate blocks in the city of Anoka, and was damaged by a fire that injured the lumber upon one block, but did no harm to the lumber upon the other. When the fire occurred the property was protected by policies of insurance aggregating $50,000, of which $40,000 covered both lots, while $10,000 covered only the lot that was injured. The defendant's policy belonged to the latter class, and contained the following provision, which is also found in all the policies taken out by the present plaintiff, whether in Class A or in Class B:

"This company shall not be liable under this policy for a greater proportion of any loss on the described property than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property."

Upon these facts the insurance company contended, and was sustained in this contention by the Circuit Court and by the Court of Appeals, that the compound policies must bear the loss in common with the specific policies. The opinion of the Court of Appeals is in part as follows:

"This contract is too plain to permit construction, too positive to allow evasion, and too clear to admit of doubt. It provides that this defendant in error shall not be liable for any greater proportion of the loss on the property described in it than the amount insured by it shall bear to the whole insurance covering the property it describes. It will not do to say that the policies for $40,000, which insured both this property on the westerly block and that upon the easterly block, did not cover to their full amount the property described in the policy. The whole includes all its parts, and that which covers the whole covers every part that constitutes the whole. The policy in suit requires the insured to state in his proofs of loss 'all other insurance, whether valid or not, covering any of said property.' If, pursuant to this provision, the plaintiffs in error had stated in their proofs of loss that the amount of their insurance on this property by virtue of these compound policies for $40,000 was only $28,667.95, it is plain that their statement would not have been true. If the loss upon the property on this westerly block had been $80,000 instead of $30,982.02, the insured could certainly have collected the full $40,000 on these compound policies. How, then, can it be said that the entire $40,000 of insurance furnished by these compound policies did not cover the property damaged? * * * It is not our province to make contracts for the parties to this suit, or to modify those which they have themselves deliberately made, because it appears to us that they might have made those that would have been more equitable or more advantageous. They have made a contract themselves which fixes the amount of the liability of the defendant for this loss. This action is founded on that contract, and it is the sole measure of the defendant's liability. The only question here is whether or not the plaintiffs in error may recover under this policy any greater proportion of the loss upon the property which it describes than that which the amount insured by it bears to the entire insurance covering that property. The policy expressly provides that they cannot, and that must close this discussion."

This is directly in point, and so, also, is the decision of the Supreme Court of the United States in Home Ins. Co. v. Baltimore Warehouse Co., 93 U. S. 527, 23 L. Ed. 868. In that case it appeared that the

warehouse company had taken out two policies amounting to $30,000, one of them in the Home Insurance Company, on "merchandise, hazardous or extra hazardous, their own or held by them in trust, or in which they have an interest or liability." These policies were held by the court to protect the merchandise itself, not merely the warehouse company's interest in it or lien upon it, and therefore to cover all the cotton and tobacco that belonged to several owners in separate lots, and had been stored as security for advances made by the warehouse company. Some of the owners had themselves taken out specific insurance upon their own property, and, as the suit was upon one of the general, or floating, policies, the precise question now before the court was thus presented. The Supreme Court seemed to regard the proposition as scarcely open for discussion, that all the policies, general as well as specific, must contribute; for the following brief paragraph from the opinion, which was delivered by Mr. Justice Strong, contains all that was considered necessary to say upon the subject:

"Without pursuing this discussion further, we have said enough to vindicate our opinion that the policy upon which this suit was brought covered the merchandise held by the warehouse company on storage, and not merely the interest of the bailees in that property. It follows, necessarily, that there was double insurance. The policy issued to the warehouse company and those obtained by the depositors of the merchandise covered the same property, and they were for the benefit of the same owners. The persons assured were the same; for, if the policies taken out by Hough, Clendening & Co. were upon their goods, notwithstanding the memorandum that the loss, if any, was payable to the Baltimore Warehouse Company, as may be conceded was the case, so was the policy now in suit. The insurers are liable, therefore, pro rata, each contributing proportionately."

But the reporter's abstract of the argument for the insurance company shows that the question of the insurance company's liability to contribute was distinctly raised, and that the court was asked to decide that no contribution could be enforced from the plaintiff in error, because there was no double insurance.

Other courts hold the same opinion. In Ogden v. Ins. Co., 50 N. Y. 388, 10 Am. Rep. 492, the Court of Appeals (overruling Ins. Co. v. Scribner, 5 Hill, 298 upon which the Supreme Court of Pennsylvania greatly relied when the present rule was adopted in Sloat v. Ins. Co., 49 Pa. 14, 88 Am. Dec. 477) decided that:

"Where a specific parcel of property is insured by a policy containing the usual clause providing for apportionment of loss in case of other insurance, and the same property is covered by another policy, which also includes other parcels, all insured together for an entire sum, this constitutes other insurance within the meaning of such clause."

This rule was applied to a somewhat different state of facts in Pitney v. Ins. Co., 65 N. Y. 6, where it was held that:

"Where a policy of insurance issued to and upon personal property owned by tenants in common contains a condition avoiding it in case of other insurance upon the same property, not consented to by the insurer in writing upon the policy, a policy issued to one of the tenants in common without mention therein of the joint ownership is other insurance within the meaning of the said clause."

In Blake v. Ins. Co., 12 Gray, 265, the defendant's policy and one other covered unmanufactured lumber only. Two other policies in

the Harmony and La Farge Insurance Companies, respectively, covered the same property, and also manufactured stock. The court below instructed the jury that the last-named policies did not prorate, "because they covered other property than that included in the defendant's policy." This was held to be erroneous, the Supreme Court saying (on page 272):

"The court erred in instructing the jury that no abatement of the amount to be recovered of the defendants could be made on account of the Harmony and LaFarge policies, because those policies covered other property besides that covered by the defendants' policy. We think these policies, though covering manufactured as well as unmanufactured stock, sustain their proportion of the loss."

Hough v. Ins. Co., 36 Md. 398, was a suit growing out of the same fire that gave rise to the case of Home Ins. Co. v. Baltimore Warehouse Co., supra, and the facts were altogether similar. Hough & Co. had stored certain bales of cotton with the warehouse company, and had taken out policies of insurance upon 28 bales thereof in the defendant company; loss, if any, payable to the warehouse company. These policies contained the usual prorating clause. Six other firms had stored other bales of cotton, so that there was a large number of bales, owned by various persons, in the warehouse at the time of the fire. The warehouse company had taken out blanket policies on "merchandise either owned or held by them in trust, or in which they have an interest or liability." It was held that these blanket policies prorated with the specific policies upon which the suit was brought. Upon this point the Court of Appeals said:

"It seems clear, therefore, that the cotton of the appellants was insured by the two policies issued to the warehouse company, and that it can recover, not only to the extent of its interest in the property insured, but to the extent of the loss, unless the right of recovery to that extent is limited by some provision or condition of the policies. The policies sued on having on their face been made payable to the warehouse company, they inured to the benefit of that company, and may be considered as in favor of the same assured, on the same interest in the same subject, and against the same risks, as the policies which were issued directly to the warehouse company by the Home and Associated Firemen's Companies. They are therefore what are termed 'double policies' (Sloat v. Royal Ins. Co., 49 Pa. 18 [88 Am. Dec. 477]), and the insurance companies issuing them are bound to contribute their respective proportions of the loss."

See, also, cases cited in Elliott on Insurance, § 250, and in 13 Amer. & Eng. Enc. of Law (2d Ed.) 310 (5). The subject is further discussed in May on Insurance (4th Ed.) §§ 366, 436–438.

It is not necessary to consider at any length the parol evidence concerning the conversations between the plaintiff and the two insurance agents respectively. Manifestly, these conversations did not affect the rights either of the plaintiff or of the defendant. Mr. Shaner did precisely what both parties intended him to do, namely, issued specific policies upon the east wing and its contents. For the purposes of this case it is conceded that these policies permitted other insurance, and no more effect could be given to what he said than to hold it to be the equivalent of this concession, namely, a waiver of the printed clause in the defendant's policy that forbade other insurance without the defendant's consent. What Mr. Coleman may have supposed the respec-

tive scope of the two classes of policies to be is unimportant. Class A policies had already been issued, and the rights of the parties thereunder could not be changed by a subsequent expression of the agent's opinion concerning the necessity of indorsing permission to build an addition or to take out other insurance. The necessary elements of a waiver of any provision in the policies of either class are not discernible, and the rights of the parties are therefore to be determined by the written contracts alone.

The defendant asks, and I think correctly asks, that the loss be apportioned in the following manner: Class A insures $130,000 on the main building; Class B does not cover this building at all, and therefore Class A must bear the whole loss, $1,815.65, leaving a balance of $128,184.35, which, with the $60,000 of Class B must bear the loss on the east wing and must pay $19,527.94, while Class B pays $9,140.56, aggregating the amount of the adjustment, $28,668.50. The pupils' clothing in the east wing was insured by Class B alone, and the whole amount of this loss, $4,500, must therefore be borne by the specific policies, leaving $3,000 of Class B to share the loss on the other contents of the east wing. In like manner the contents of the main building were insured by Class A alone, and all of the loss thereon, $2,332.30, must be paid for by this class. Of the $50,000 insured by Class A upon the contents of the two buildings, $47,667.70 will therefore remain to share, with the $3,000 of class B, the loss of $8,750 on the remaining contents of the east wing. Of this, Class A pays $8,231.93 and Class B pays $518.07.

The sum of the whole matter is that for the reasons heretofore stated the defendant is liable to the plaintiff in the sum of $1,048.78, with interest from April 20, 1902, instead of the sum of $2,679.15, with interest from the same date, as claimed by the plaintiff.

Judgment may be entered accordingly.