KILDALL FISH COMPANY v. PETER C. GIGUERE AND OTHERS.[1]

May 11, 1917.

Nos. 20,107—(35).

**Principal and surety — action on contractor's bond — violation of conditions.**

In this action to recover against the surety on a building contractor's bond the amount of mechanics' liens on the property which the owner was compelled to pay, it is *held*:

(1) The evidence sustains a finding that no change was made in the plans and specifications which increased the amount to be paid the con-

[1]Reported in 162 N. W. 671.

tractor more than 10 per cent of the penalty of the bond, in violation of the condition thereof to that effect.

(2) The surety was not released or its liability reduced by the failure of the owner to give notice of the failure of the contractor to complete the building by the time specified in the contract, no claim being made by the owner because of such failure, and there being no showing of prejudice to the surety because of the omission to give the notice.

(3) It was not error to refuse to permit the surety to prove that the contractors did not apply payments made by the owner under the contract to the payment of claims for material and labor furnished for the building.

(4) The surety was not released or its liability reduced because delays on the part of the owner and other contractors caused loss to the principal, the contract providing a remedy for such loss and the principal not availing himself thereof.

Action in the district court for Hennepin county to recover $8,976.17 upon a building contractor's bond. The case was tried before Fish, J., who made findings and ordered judgment in favor of plaintiff for the amount demanded. From an order denying its motion for a new trial, American Surety Company appealed. Affirmed.

*Kerr, Fowler, Schmitt & Furber*, for appellant.

*James E. O'Brien* and *George M. Bleecker*, for respondent.

BUNN, J.

July 24, 1914, plaintiff and defendants P. C. Giguere & Son entered into a written contract, by the terms of which defendants were to erect a warehouse for plaintiff on land owned by it in consideration of the sum of $58,500. To secure the faithful performance of this contract defendants Giguere & Son, as principal, and defendant American Surety Company, as surety, on August 4, 1914, executed and delivered to plaintiff a bond in the penal sum of $29,250. This action is on this bond, the breach alleged being the failure of the contractors to pay certain claims for material and labor, with the result that mechanics' liens were filed against the property, which plaintiff was compelled to pay. The case was tried by the court without a jury, and a decision rendered in favor of plaintiff and against both principal and surety for the amount which plaintiff was thus compelled to pay with interest. Defendant

surety company appeals from an order denying its motion for a new trial.

It is not disputed that the contractors failed to pay claims for material and labor, that the liens filed therefor were valid and enforceable, or that plaintiff was compelled to and did pay these claims to obtain releases of the liens. It is admitted that the contractors have not refunded to plaintiff any part of the sums so paid, as the contract required, and that the appellant has not indemnified plaintiff for this failure of the contractors to faithfully perform their contract. In brief, a breach of the bond and appellant's liability therefor is clear, unless one or more of the defenses here urged is sustained. We will state and dispose of the contentions of appellant in their order.

1. The bond contained the provision that "no change shall be made in such plans and specifications which shall increase the amount to be paid the principal more than ten per centum of the penalty of this instrument without the written consent of the surety." It is claimed that this provision was violated, and that in consequence the surety was entitled to at least a reduction of its liability, if not to an absolute release. The penalty of the instrument was $29,250, and the provision would permit to be paid the principal an increase of $2,925 due to changes in the plans and specifications. It is admitted that there was a change in the original plans which increased the contract price $1,109.60, and it may be conceded that other claims of extras involving some changes in the plans made the total increase in the contract price $2,169.10, which is less than 10 per cent of the penalty of the bond. The surety claims that there were additional changes in the plans and specifications which made a total increase of $5,718.48. Plaintiff contends that these extras involved no changes in the plans or specifications, added nothing to the contract price, but were material and labor furnished plaintiff by the contractors after the practical completion of the contract under separate contracts, and paid for at an agreed price, being the actual amount paid by the contractors for labor, the invoice price of materials, with 10 per cent added for "supervision," four per cent for "overhead," and the amount paid by the contractors for liability insurance. The trial court found the facts to be as claimed by plain-

tiff, and that the increase in the contract price occasioned by changes in the plans and specifications was less than 10 per cent of the penalty of the bond. It is not entirely clear how these additional contracts did not increase the total price paid by plaintiff to the contractors, but it is fairly clear that this did not involve changes in the plans and that the surety was not prejudiced. We will content ourselves with saying that we think there was no such violation of the provision in question as would defeat the liability of the surety, and the surety concedes that it is not possible to determine in "money value" the prejudice or damage to the surety, so as to fix the extent of a *pro tanto* reduction of liability.

2. The contract was to be performed by December 15, 1914. There were delays and the contractors did not finish the work until March 1, 1915. The bond required plaintiff to give the surety written notice of any default on the part of the principal and the date thereof within 10 days after plaintiff or its representative or the architect should learn of such default. This was not done, no notice being given of the failure to complete the building by the time specified. Appellant claims that the failure to give this notice discharged the surety. It is true that the failure to complete the building at the time specified was technically a default on the part of the contrators, but the trial court found, and the finding is not challenged, that plaintiff has not at any time claimed any default on the part of the contractors because of such failure to complete the work at the time specified. Neither does plaintiff make any claim in this action for any loss to it on that account. The only default for which plaintiff seeks to recover is the failure of the contractor to pay mechanic's lien claims. Except for the element of prejudice to the surety by failure to give the notice required, the case is controlled by prior decisions of this court. Lakeside Land Co. v. Empire State Surety Co. 105 Minn. 213, 117 N. W. 431; Fitger Brewing Co. v. American Bonding Co. of Baltimore, 115 Minn. 78, 131 N. W. 1067; Pulaski Hall Assn. v. American Surety Co. 123 Minn. 222, 143 N. W. 715; Fitger Brewing Co. v. American Bonding Co. 127 Minn. 330, 149 N. W. 539; Church of Immaculate Conception v. Curtis, 130 Minn. 111, 153 N. W. 259. It is the settled doctrine of these cases that a delay in the completion of the building on time may not have resulted in damages, and

may in any event be waived by the owner, and if so waived, does not constitute a default or breach of the contract which makes either the contractor or his surety liable, and therefore that the failure to give this notice does not release the surety. The doctrine of these cases is severely criticized by appellant in this case, and it may be admitted that there are respectable authorities *contra*, and room for argument. But we have declared and applied the rule so often and so recently that we do not feel disposed to consider the question an open one in this state.

There is one element in the present case that did not exist in any of the cases referred to, or at least received no attention from the court. This may be called the element of prejudice to the surety by the failure to apprise it of the contractors' default. In the Lakeside Land Company case, referring to the case of U. S. Fidelity & Guaranty Co. v. Rice, 148 Fed. 206, 78 C. C. A. 164, the court called attention to the provision in the bond in that case to the effect that, in the event of default on the part of the contractor, the surety should have the right, if it so desired, to assume or complete the contract, and be subrogated to all the rights and properties of the principal arising out of the contract. Mr. Justice Lewis noted that there was no such condition either in the bond or the contract in the case then before the court, and distinguished the Rice case because of this provision. In the case at bar the bond does contain the provision that the party shall have the right, within 30 days after the receipt of such notice of the contractor's default, to proceed, or procure others to proceed, with the performance of such contract; shall be subrogated to all of the rights of the principal, and that any and all moneys or property that may, at the time of such default, be due or that thereafter may become due to the principal under said contract, shall be credited upon any claim which the obligee may then or thereafter have against the surety, and the surplus, if any, applied as the surety may direct. It is argued that a notice of the failure to complete the building on time would have enabled the surety to exercise its option to take over the work, and that it would have thus saved the loss arising from the lien claims which the contractors failed to pay. But the evidence is conclusive that the failure to complete the building by the time specified was not regarded as a default of the contractors or a breach of their contract. The delay was partly caused by instructions

136 M.—27

of the owner to hold up the work, and partly from other causes for which the contractors were not responsible. Clearly the owner had no idea of attempting to hold the contractors to their agreement to finish the building on or before December 15, 1914. This not being considered a default by plaintiff, it is quite clear that the surety, had it been notified and had it investigated the causes of the delay, would not have exercised its option. It could not well be prejudiced by the mere delay in completing the building. Indeed, when notified in February by the owner that the contractors had failed to pay certain claims for material, a clear and vital breach of their contract for which the surety was liable, the option was not exercised. While the argument of counsel for appellant is not without force, and while there is very respectable authority to support it, we are of the opinion, following our own decisions, that the failure of plaintiff to notify the surety that the contractors had not completed the building at the time specified did not release the surety from liability for the default of the principal in paying claims for material and labor, or entitle it to any reduction of its liability. We do not say that a case might not arise where the failure to give this notice would prejudice the surety, and in such a case it would doubtless be entitled to some relief. But we fail to see any prejudice in this case.

3. Appellant claims that the trial court erred in refusing to permit it to prove that the contractors, after December 15, 1914, and before the surety was notified of their failure to complete the building by that time, made payments out of the money paid them by plaintiffs on the contract to parties who had not furnished material or labor for the building. It is conceded that all payments by plaintiff to the contractors were made on certificates of the architect, and that the contractors were not overpaid at any time. It is not claimed that plaintiff knew that the contractors were using any part of the money to pay their other creditors. Plaintiff was obliged under the contract to make these payments, and it was not obliged to see that the contractors applied the money to pay those who furnished material and labor for its building. When plaintiff made payments to the contractors under the contract, the money belonged to the contractors, and they could use it as they saw fit. Presumably they expected some profit. We fail to see any merit in this point.

4. The building contract provided that, should the contractor be delayed in the prosecution or completion of the work by the act, neglect or default of the owner, or of any other contractor employed by the owner upon the work, then the time fixed for the completion of the work shall be extended for a period equivalent to the time lost, "which extended period shall be determined and fixed by the architect; but no such allowance shall be made unless a claim therefor is presented in writing to the architect within forty-eight hours of the occurrence of such delay." The contract further provided that "the owner agrees to provide all labor and materials essential to the conduct of this work not included in this contract in such manner as not to delay its progress, and in the event of failure so to do, thereby causing loss to the contractor, agrees that he will reimburse the contractor for such loss." The contractor agrees to reimburse the owner for any loss for which he shall become liable by reason of any delay on the part of the contractor. In case the owner and contractor fail to agree as to the amount of the loss in either case, the determination is to be left to arbitration.

Appellant contends that the contractors were delayed in the prosecution and completion of the work by the act of the owner in directing them to go slow, and by the failure of the excavators, who were contractors employed by the owner, to diligently prosecute their work. It is claimed that this delay caused a serious loss to the contractors. But they made no claim for an extension of time, nor was there any submission of the amount of the loss to arbitration, as provided. The contractors do not appeal, and we need not consider the case as between them and the plaintiff. The surety company seems to claim that it suffered damage by these delays, presumably for the reason that but for the delays the contractors could have done the work at less expense, and would have been able to pay at least some part of the claims for which liens were filed. Granting that the owner was responsible for the delay, and that the contractors had a just claim against it for the loss they sustained, they failed to take advantage of the remedy provided by the contract. We find no provision of the bond that releases the surety from liability or lessens its liability under such circumstances.

Order affirmed.