## ODEGARD v. GENERAL CASUALTY & SURETY CO.

### No. 8677.

Circuit Court of Appeals, Eighth Circuit.

Sept. 8, 1930.

H. V. Mercer, of Minneapolis, Minn. (E. L. McMillan, of Princeton, Minn., and E. J. Lien, of Minneapolis, Minn., on the brief), for appellant.

F. H. Stinchfield, of Minneapolis, Minn. (Merriam & Wright, R. F. Merriam, Stinchfield, Mackall, Crounse & McNally, and Thomas P. Helmey, all of Minneapolis, Minn., on the brief), for appellee.

Before KENYON, BOOTH, and GARDNER, Circuit Judges.

BOOTH, Circuit Judge.

This is an appeal from a judgment dismissing plaintiff's action on the merits at the close of a trial. The suit was against the Skeena Lumber Company, Limited, and the appellee, upon a bond given to appellant by the lumber company with appellee as surety, to insure the performance of a contract between the Lumber Company and appellant. Brought originally in the state court, the suit was removed to the federal court on petition of both defendants on the ground of diversity of citizenship.

The contract, to secure the performance of which the bond was given, provided, in substance, for the sale of lumber and lumber products by the lumber company to appellant, Odegard, to be ordered and specified by him, of the aggregate value of $8,000, and to be paid for as follows: Odegard was to advance to the lumber company the full sum of $8,000, and to receive in return its promissory notes of $500 each, aggregating $8,000. The notes were to be paid by shipments of lumber under the contract. The notes were payable, respectively, on November 1, 1925, and on the 1st of each month thereafter until all were paid. The contract further provided:

"10. It is further covenanted and agreed by and between the said parties that the said party of the second part shall ship to the said party of the first part at Santiago, Minnesota, or to such other point or points as said party of the first part shall direct, lumber as ordered and specified by the party of the first part of the value of Five Hundred Dollars at the prices aforesaid, on or before the first day of November, 1925, and lumber of the value of Five Hundred Dollars at such price on or before the first day of each succeeding month thereafter until lumber of the value of such price of the said sum of $8,000.00 shall have been so shipped by said second party to said first party.

"11. It is further agreed between said parties that the party of the first part shall, on or before the first day of October, 1925, specify and order from the second party the different kinds of lumber that the said party of the first part desires to have shipped and delivered on or before the first day of November, 1925, and to make up said $500.00 shipment, and monthly thereafter said orders shall be placed by the said party of the first part with such party of the second part for the different kinds of lumber said party of the first part desires shipped on or before the first day of the following month to cover the amount of said shipments as herein specified.

\* \* \* \* \* \*

"13. It is further covenanted and agreed that the said second party shall not be responsible for delays or failure to make its shipment within the terms of this contract on account of any condition arising from strikes, inability to secure railroad transportation, riots or civic commotion or any act of God beyond the control of said party of the second part."

The bond accompanying the contract contained the following provisions:

"Now, Therefore, the condition of this instrument is such, that if the principal indemnifies the obligee against loss or damage directly arising by reason of the failure of the principal faithfully to perform the above mentioned contract, then this instrument shall be null and void; otherwise to remain in full force and effect; provided however, and this instrument is executed by the Company, as surety, upon the following express conditions, which shall be precedent to the right of recovery hereunder.

"1. The obligee shall, at the times and in the manner specified in said contract, perform all the covenants, matters and things required to be by the obligee performed; and if the obligee default in the performance of any matter or thing agreed or required in this instrument or in the contract, to be performed by the obligee, the Company shall

thereupon be relieved from all liability hereunder.

"2. If said principal shall in any manner default in the performance of any matter or thing in said contract specified to be by said principal performed, or in the event said principal shall abandon the work provided by said contract to be done by said principal, the obligee shall immediately so notify the Company and thereafter the Company shall have the right at its option to assume and sublet said contract and to proceed thereunder as if no default or abandonment had occurred."

"6. * * * Nor shall the Company be liable under this instrument unless the consideration to be paid the principal by the terms of said contract shall be cash."

"8. * * * The obligation of the Company is and shall be construed strictly as one of suretyship only."

"9. No action, suit or proceeding shall be had or maintained against the Company on this instrument unless the same be brought or instituted and process served upon the Company therein within six months after the principal shall cease performing the work mentioned in said contract and in no event after six months after the date, time or period fixed in said contract for the completion of the work mentioned therein."

"11. All notices and other evidence required by this instrument to be furnished by the obligee to the Company shall be in writing, and shall be forwarded by registered letter addressed to the Company at its principal offices in the city of Detroit, Michigan.

"12. None of the conditions or provisions contained in this instrument shall be deemed waived by the Company unless the written consent to such waiver be duly executed by its President or Vice-President and its seal be thereto affixed and duly attested."

The action was commenced in July, 1927. The complaint alleged default in the performance of the contract and breach of the condition of the bond. The answer of the surety company alleged (1) that the consideration for the contract and bond was not paid in cash as was provided in the bond; (2) that plaintiff had failed to give the defendant surety company immediate notice of default, as required by the bond; (3) that plaintiff had failed to commence suit within the time limited in the bond; and (4) that the contract and bond did not constitute the entire agreement of the parties, but that, as a part of the agreement, the lumber company and plaintiff entered into another contract whereby the lumber company agreed to pay a further sum of $8,000, secured by notes maturing at the identical dates and in the same amounts and to be paid by delivery of lumber in the same manner as under the contract attached to the complaint, but said purchase price of said lumber to be applied upon the purchase price of land to be conveyed to the lumber company. The reply admitted the land contract, but alleged that it was entirely independent of the bond and the contract, known as the cash contract, which the bond accompanied.

By stipulation in writing, duly signed and filed, a jury was waived, and the case tried to the court without a jury.

The defendant lumber company withdrew its answer and stipulated that judgment might be entered against it.

At the close of the trial the court found generally for the defendant surety company and dismissed the action.

On the appeal in this court, a number of matters are discussed by counsel in their briefs. We find it necessary to consider at length two only: (1) The alleged default in performance of the contract, and failure to give notice of the default; (2) the alleged waiver of notice.

There was substantial evidence tending to establish the following facts: Mr. Odegard gave orders to the lumber company for shipment as provided in the contract, and received one car of lumber in October, 1925. Two other cars, which had been shipped to another party but refused, were taken over by Mr. Odegard in December, 1925. These three cars amounted to slightly more than $500; and the first note under the cash contract was canceled and returned, and the balance applied on the first note under the land contract. No further lumber was shipped under the cash contract secured by the bond. One other car was received in March or April, 1926, but this was under the land contract. Orders were given by Mr. Odegard for December, 1925, delivery; and later other orders were given, some written, some oral, but the lumber did not arrive. In December Mr. Odegard began to be worried about the nonarrival. He visited the lumber company's office in Minneapolis and interviewed one or more of the officers of the company. He did this frequently, at least weekly, in December and January. He was told the latter part of January or the first part of February, 1926, that the company had been unable to ship the lumber on account of a flood. This same ex-

cuse was offered several times. Finally, at some time between January 1 and March 31, 1926, Mr. Odegard went to the office of Mr. Schunk, agent of the surety company and attorney in fact for it in Minneapolis to sign bonds, and talked to him about the delay and the flood. Mr. Schunk verified the report as to the flood and expressed his opinion that the lumber would be shipped. Mr. Schunk testified that he told Mr. Odegard not to rely on his statements and thereby lose any legal rights; this testimony is in dispute. There was no affirmance or denial by Mr. Schunk of any liability of his company upon the bond. Almost weekly until June Mr. Odegard visited the office of the lumber company to inquire about the lumber. Sometimes he received evasive answers to his inquiries; sometimes promises that the lumber would come pretty soon; sometimes promises that lumber intended for others would be diverted to him. Once he was told by an officer of the lumber company that it had a new scheme of financing itself and would soon be in a position to start shipping the lumber. This was in March or April, 1926. Finally, in June, 1926, Mr. Odegard consulted an attorney, and upon his advice wrote the surety company the following letter:

"June 5, 1926.

"Gentlemen: You may please refer to Contract Bond of your issue, number F & S 152, executed by the Skeena Lumber Company, Limited, and you, to John E. Odegard, under date of August 20, 1925.

"As the text of the bond indicates, it was drawn to cover a contract which I entered into with the Skeena Lumber Company, to the amount of $8000.00. Now the same Skeena Lumber Company has defaulted in the payment of notes amounting to $3500.00, and interest at the rate of six per cent from August 20, 1925, which were given in connection with the said contract, therefore this is to give you formal notice of said default, as required in the provisions of the bond, and to ask that you, as surety, make good to me the amount of the default.

"Your early attention to the adjustment of this matter will be much appreciated."

The company wrote in reply:

"June 11th, 1926.

"Dear Sir: We are making inquiries concerning the status of the Skeena Lumber Company contract and will be pleased to write you further as soon as our investigation is completed."

Further letters were written by Mr. Odegard to the company on July 7, 1926, August 19, 1926, and May 3, 1927; and on May 11, 1927, a letter was written to Mr. Odegard by the attorneys for the company, reading as follows:

"May 11, 1927.

"In re: Your letter of the 3rd inst. regarding Bond of Skeena Lumber Company, Ltd.

"Dear Mr. Odegard: As you have heretofore been advised it is our opinion that there is no liability whatsoever under the above named bond insofar as the General Casualty & Surety Company is concerned."

The testimony is in dispute whether the company through its attorneys orally denied its liability in October, 1926.

Default in Performance of the Contract, and Failure to Give Notice Thereof.

■ It has already been noted that the bond provided that certain conditions should be precedent to recovery on the bond, "1. * * * If the obligee default in the performance of any matter or thing agreed or required in this instrument or in the contract, to be performed by the obligee, the Company shall thereupon be relieved from all liability hereunder"; also that, "2. If said principal shall in any manner default in the performance of any matter or thing in said contract specified to be by said principal performed, or in the event said principal shall abandon the work provided by said contract to be done by said principal, the obligee shall immediately so notify the Company"; also that the bond provided that all notices should be in writing and sent by registered letter to the company at Detroit, Mich.

It has been held by this court in numerous cases that such conditions are valid and material, and that compliance therewith is a condition precedent to a right of recovery. National Sur. Co. v. Long (C. C. A.) 125 F. 887, 888; United States F. & G. Co. v. Rice (C. C. A.) 148 F. 206, 207; Maryland Cas. Co. v. Bank of England (C. C. A.) 2 F. (2d) 793; New Amsterdam Cas. Co. v. Farmers' Co-op. Union (C. C. A.) 2 F. (2d) 214; New Amsterdam Cas. Co. v. Central, etc., Co. (C. C. A.) 4 F. (2d) 203, 204; St. Louis, etc., Co. v. New Amsterdam Cas. Co. (C. C. A.) 40 F. (2d) 344.

National Sur. Co. v. Long was an action on a surety bond given to secure performance of a contract to construct a building. The bond provided for immediate notice to the surety of any default, and provided further that the surety company should have the right to complete the contract. The bond contained the following provisions:

"This bond is executed by the company as surety on condition that its liability shall be limited by, and subject to, the conditions and provisions hereinafter contained, which shall be conditions precedent to the right of the obligee to recover hereunder, anything in said contract to the contrary notwithstanding."

"The failure, neglect or refusal of the obligee to keep, strictly observe, and fully perform, any matter or thing in this bond or in said contract stipulated and agreed to be done, kept or performed by the obligee, at the time and in the manner specified, shall relieve the company from all liability under this bond."

The contract contained the following provision:

"The said party of the second part agrees to complete said building by the first day of September, 1901, and the said party of the second part further agrees that in case he fails to complete said building by the fifteenth day of September, 1901, shall pay to the said party of the first part, as liquidated damages, the sum of five dollars for each and every day or part of a day that said building remains incompleted after the said time, that sum being the actual loss occurring to the said party of the first part by said delay."

The evidence showed that on September 1st plaintiff Long knew that the contractor would not be able to perform the contract. September 9th the contractor abandoned the contract. September 12th notice was given the surety company.

The lower court charged the jury:

"That the time fixed by the contract for the completion of the building was September 15, 1901; that, if the plaintiff gave the notice of the inability or failure of the contractor to perform his contract to the surety company in such time as a man of ordinary prudence would have given it under similar circumstances, they might return a verdict in his favor, but that, if he was guilty of negligence in this matter, their verdict should be for the defendant."

This court reversed the judgment for plaintiff, holding that September 1st was the date for the completion of the contract, and said (page 889 of 125 F.):

"The care or negligence with which an obligor, who fails, seeks to perform his contract, is no defense to an action for damages for his failure. The only test of the right to recover in such an action is the existence of the breach of the covenant. * * * The

covenant of the plaintiff in the case under consideration was to immediately notify the surety company of any failure or inability of the contractor to construct and complete the building at the time and in the manner specified in the contract, and the question was not whether or not, although he failed to give the notice, he had exercised ordinary care to do so, but whether or not he had actually given the notice immediately upon the appearance of the known inability and failure of the contractor to perform his agreement."

The court further said (page 891 of 125 F.):

"Moreover, it is not indispensable to the validity or to the enforcement of this plain covenant of the obligee—this condition precedent to the liability of the defendant under the bond—that the latter should either establish its beneficence or its materiality, or that it should show that it has sustained injury from the failure to fulfill it."

United States F. & G. Co. v. Rice was an action on a surety bond given to secure performance of a building contract. The contract called for completion of the building by December 1st. The bond provided:

"That no liability shall attach to the surety hereunder unless, in the event of any default on the part of the principal in the performance of any of the terms, covenants or conditions of the said contract, the obligee shall promptly upon knowledge thereof, and in any event not later than thirty days after the occurrence of such default, deliver to the surety at its office in the city of Baltimore, written notice thereof with a statement of the principal facts showing such default and the date thereof. * * * Second. That in case of such default on the part of the principal, the surety shall have the right, if it so desires, to assume and complete or procure the completion of said contract."

The facts were undisputed that default occurred and that the surety was not notified within thirty days. The trial court held that time was not of the essence of the contract. In reversing the judgment, this court said (page 208 of 148 F.):

"The parties, by clear and unambiguous language, contracted that no liability should attach to the surety company unless it received notice of any default on the part of the contractor promptly upon knowledge thereof by the owner, and, in any event, not later than 30 days after any such default to the end that it might avail itself, if it desired, of the opportunities furnished by the bond for

protecting itself. We think that stipulation of the contract was as binding upon the owner as the obligation to pay was upon the surety company. It was a most reasonable stipulation. Its purpose was to protect the surety company against the consequences of any default by providing that, on the occasion of any default whatsoever, it might have the opportunity of determining its effect upon its own liability and of acting accordingly."

Maryland Cas. Co. v. Bank of England was an action on bond guaranteeing fidelity of a bookkeeper of plaintiff bank. Defense, breach by the bank of certain conditions of the bond. The bond contained the following:

"This bond is executed by the company upon the following express conditions, which shall be deemed conditions precedent to any right of the employer to recover hereunder."

Among the conditions were the following questions and answers:

I. "In case of applicant [bookkeeper] handling cash or securities, how often will the same be examined and compared with the books, accounts and vouchers, and by whom? [A.] Monthly."

II. "Will any examination of the applicant's accounts be made outside of the audit of the state or national bank examiners? [A.] No."

The trial court and the appellate court both held that the condition of monthly examination was valid. Both courts held that failure to answer the question "by whom" the monthly examinations were to be made was waived by the company by accepting the application and issuing the bond. The trial court held that the condition of monthly examination was waived by accepting the question and answer II, because the surety company was bound to know that under the law the state and national bank examiners did not make monthly examinations. This court held on appeal that monthly examinations were not waived, because questions I and II referred to different matters—the first to examination by bank officials; the second by audits by outside expert examiners. The condition as to monthly examination being valid and not having been waived, but having been breached by the plaintiff bank, no recovery was allowed against the surety company.

New Amsterdam Cas. Co. v. Central, etc., Co. was an action on a bond given to secure faithful performance of a contract by agents of plaintiff. The contract provided that the agents should send to the plaintiff not later than the 15th of each month a monthly report, and not later than 75 days after the month for which the report was made send the balance shown due. The bond contained the following:

"Provided * * * that the obligee, upon learning of any act which may be made the basis of any claim hereunder, written notice thereof shall be mailed to the surety at its office at No. 60 John street, New York City, New York, within thirty days after so learning of any such act."

The agents failed to send the remittance shown by the reports sent. The court held that, conceding the bond was to be construed in accordance with the rules for construction of insurance contracts, yet the terms were plain, and the bond must be given effect according to its terms; notice of the defaults was not given, and this failure was a breach of the bond, and plaintiff therefore could not recover.

Upon the facts in the case at bar, hereinbefore set out, we think the trial court was clearly justified in finding that default in the performance of the contract occurred as early as December, 1925, and certainly not later than January or February, 1926, and was continuous thereafter; that written notice of the default was not sent to the company until June 5, 1926. And also in view of the same facts, and of the authorities above cited, we think the contention cannot be sustained that time was not of the essence of the contract, and that the notice given in June satisfied the requirement of the bond.

### Waiver of Notice.

On the question whether the provision in the bond as to notice was waived, it has already been noted that the bond contained the following provision:

"12. None of the conditions or provisions contained in this instrument shall be deemed waived by the Company unless the written consent to such waiver be duly executed by its President or Vice-president and its seal be thereto affixed and duly attested."

Neither the letter of June 11, 1926, from the company, nor the letter of May 11, 1927, from the attorneys for the company, can be considered as a waiver. Reynolds v. Detroit F. & S. Co. (C. C. A.) 19 F.(2d) 110.

It is claimed, however, that what was said and done by Mr. Schunk constituted a waiver. There is no proof, and it is not claimed, that what was said and done by Mr. Schunk was made known to the company; and, furthermore, we think a waiver of this requirement

could not be made by Mr. Schunk, when the bond itself provided that no person except certain designated officers could waive any of the provisions or conditions of the contract. Mr. Schunk was not one of the officers designated. He was a mere agent, and there was no showing that he had express authority to make a waiver; or that what he said and did in connection with the matter of default and notice was made known to the company and ratified by it. Aetna Life Ins. Co. v. Moore, 231 U. S. 543, 34 S. Ct. 186, 58 L. Ed. 356; Prudential Ins. Co. v. Moore, 231 U. S. 560, 34 S. Ct. 191, 58 L. Ed. 367; Northern Assur. Co. v. Grand View, etc., Ass'n, 183 U. S. 308, 22 S. Ct. 133, 46 L. Ed. 213; Aetna Life Ins. Co. v. Johnson, 13 F.(2d) 824 (C. C. A. 8); Inter-Southern Life Ins. Co. v. McElroy, 38 F.(2d) 557 (C. C. A. 8); Bradley v. New York Life Ins. Co., 275 F. 657 (C. C. A. 8); MacKelvie v. Mutual Ins. Co. (C. C. A.) 287 F. 660.

In the Johnson Case, supra, a waiver in respect to the payment of the first premium on a life insurance policy was claimed to have been made by an agent of the company. This court in its opinion said [page 825 of 13 F.(2d)]:

"A waiver of this requirement cannot be made by an agent of the insurance company, when the policy provides that no person except other designated officers of the insurance company may alter or waive any provision of the policy, unless the insuring company has authorized the waiver to be made."

### State Court Decisions.

It is contended, however, by appellant, that this bond was a Minnesota contract, and that both of the foregoing questions have been determined by the courts of that state; that, under the decisions of the Supreme Court of the state of Minnesota, time was not of the essence of the contract; that failure to perform the contract at the times specified could be waived by Mr. Odegard, the obligee in the bond; that failure by him to give notice of default to the surety company would not release that company, unless it showed prejudice resulting from such failure. It is further contended that under the Minnesota decisions a waiver could be made by Mr. Schunk as to the provision in the bond relative to notice of default, notwithstanding the provision above quoted as to waiver; and it is further contended that in fact he did waive notice.

We have examined the Minnesota decisions (Lakeside Land Co. v. Empire State Sur. Co., 105 Minn. 213, 117 N. W. 431; Fitger Brew. Co. v. American Bond. Co., 115 Minn. 78, 131 N. W. 1067; Fitger Brew. Co. v. American Bond. Co., 127 Minn. 330, 149 N. W. 539; Standard, etc., Co. v. Nat. Sur. Co., 134 Minn. 121, 158 N. W. 802; Kildall Fish Co. v. Giguere, 136 Minn. 401, 162 N. W. 671; Reilly v. Linden, 151 Minn. 1, 186 N. W. 121; Johnson v. Laurence, 171 Minn. 202, 214 N. W. 24) on these questions, and we think it must be conceded that they are not in harmony with the decisions of this court, above cited, as to the effect of the failure of performance of the contract at the particular times specified, with accompanying failure by the obligee to give notice of the default. While there are differences of fact between each of the Minnesota cases and the case at bar, yet we think the differences are not of a distinguishing character. The holdings of the Minnesota cases lead to the conclusion that in the courts of that state, in cases of similar character to the one at bar, failure of performance at the times specified in the contract or the bond, with accompanying failure by the obligee to give notice of the default, will not relieve the surety company of liability unless such failure to give the notice is shown to have been prejudicial to the surety company.

█ Federal courts follow the decisions of the highest court of a state giving construction to a state statute, where no question of general or commercial law, or of violation of the Constitution or laws of the United States is involved (Norton v. Shelby County, 118 U. S. 425, 6 S. Ct. 1121, 30 L. Ed. 178; Stutsman County v. Wallace, 142 U. S. 293, 12 S. Ct. 227, 35 L. Ed. 1018; Yocum v. Parker, 134 F. 205 [C. C. A. 8]; Nielsen v. C., B. & Q. R. Co., 187 F. 393 [C. C. A. 8]); also the decisions of the highest court of the state obviously based upon such construction of a state statute (Brown v. Pacific Coast Coal Co., 241 U. S. 571, 36 S. Ct. 701, 60 L. Ed. 1177). Furthermore, the federal courts frequently defer to the decisions of the state courts, especially those declaratory of a rule of property or expressive of public policy. Burgess v. Seligman, 107 U. S. 20, 2 S. Ct. 10, 27 L. Ed. 359; Bacon v. N. W. Life Ins. Co., 131 U. S. 258, 264, 9 S. Ct. 787, 33 L. Ed. 128; Guffey v. Smith, 237 U. S. 101, 113, 35 S. Ct. 526, 59 L. Ed. 856; Northwestern Mut. Life Ins. Co. v. Johnson, 254 U. S. 96, 41 S. Ct. 47, 65 L. Ed. 155.

█ In the case at bar no construction of a statute is involved; and we do not think the questions of default in the contract and the

failure to give notice of default are questions of public policy; nor do they deal with a rule of property. They are rather questions of general law, and as such are to be decided independently by this court, giving due weight both to the state court decisions and to the decisions of other courts, including its own. Carpenter v. Providence, etc., Co., 16 Pet. 495, 511, 10 L. Ed. 1044; Northern Assur. Co. v. Grand View, etc., Ass'n, supra; Aetna Life Ins. Co. v. Moore, supra, page 559 of 231 U. S., 34 S. Ct. 186, 58 L. Ed. 356; Aetna Life Ins. Co. v. Johnson, supra. See, also, Union Life Ins. Co. v. Riggs (C. C.) 123 F. 312; Russell v. Grigsby (C. C. A.) 168 F. 577, reversed on other ground 222 U. S. 149, 32 S. Ct. 58, 56 L. Ed. 133, 36 L. R. A. (N. S.) 642, Ann. Cas. 1913B, 863; Meigs v. London Assur. Co. (C. C.) 126 F. 781, affirmed (C. C. A.) 134 F. 1021; Gordon v. Ware Nat. Bank, 132 F. 444, 67 L. R. A. 550 (C. C. A. 8); Travelers' Ins. Co. v. Thorne (C. C. A.) 180 F. 82, 38 L. R. A. (N. S.) 626; Jefferson Fire Ins. Co. v. Bierce (C. C.) 183 F. 588; Aetna Life Ins. Co. v. Roewe (C. C. A.) 38 F.(2d) 393.

In the Carpenter Case a policy of fire insurance contained a provision making the policy void if notice was not given of other insurance. The question involved was whether this included the giving of notice of a policy which in fact was void, though thought at the time to be valid. The court, speaking by Mr. Justice Story, said (pages 511, 512 of 16 Pet., 10 L. Ed. 1044):

"The questions under our consideration are questions of general commercial law, and depend upon the construction of a contract of insurance, which is by no means local in its character, or regulated by any local policy or customs. Whatever respect, therefore, the decisions of state tribunals may have on such a subject, and they certainly are entitled to great respect, they cannot conclude the judgment of this court. On the contrary, we are bound to interpret this instrument according to our own opinion of its true intent and objects, aided by all the lights which can be obtained from all external sources whatsoever; and if the result to which we have arrived differs from that of these learned state courts, we may regret it, but it cannot be permitted to alter our judgment."

In Northern Assur. Co. v. Grand View, etc., Ass'n, supra, a policy of fire insurance contained a provision voiding the policy in case of other insurance; also a provision that no officer or agent should be deemed to have waived any condition unless the waiver was written on the policy or attached thereto. The agent of the company who solicited the policy and received the premium knew at the time of other insurance. The question involved was whether the issuance of the policy and the receipt of the premium and the knowledge of the agent constituted a waiver. The court approved the Carpenter Case, saying (page 347 of 183 U. S., 22 S. Ct. 133, 147, 46 L. Ed. 213):

"Two propositions, then, are clearly established by this decision: (1) That where a policy provides that notice shall be given of any prior or subsequent insurance, otherwise the policy to be void, such a provision is reasonable and constitutes a condition, the breach of which will avoid the policy; (2) that where the policy provides that notice of prior or subsequent insurance must be given by indorsement upon the policy or by other writing, such provision is reasonable and one competent for the parties to agree upon, and constitutes a condition, the breach of which will avoid the policy."

After reviewing a large number of authorities, the court said (page 361 of 183 U. S., 22 S. Ct. 133, 153, 46 L. Ed. 213):

"What, then, are the principles sustained by the authorities, and applicable to the case in hand?

"They may be briefly stated thus: That contracts in writing, if in unambiguous terms, must be permitted to speak for themselves, and cannot by the courts, at the instance of one of the parties, be altered or contradicted by parol evidence, unless in case of fraud or mutual mistake of facts; that this principle is applicable to cases of insurance contracts as fully as to contracts on other subjects; * * * that insurance companies may waive forfeiture caused by nonobservance of such conditions; that, where waiver is relied on, the plaintiff must show that the company, with knowledge of the facts that occasioned the forfeiture, dispensed with the observance of the condition; that where the waiver relied on is an act of an agent, it must be shown, either that the agent had express authority from the company to make the waiver, or that the company subsequently, with knowledge of the facts, ratified the action of the agent."

It is to be noted that the Northern Assur. Company Case came from Nebraska; that under the Nebraska decisions such a waiver could be made by the agent, as stated by the Circuit Court of Appeals in its opinion (101 F. 77, loc. cit. 79):

"We will call attention, however, to the fact that the doctrine as heretofore stated has the approval of the supreme court of the state of Nebraska, from which state this case comes. * * * Insurance Co. v. Hammang, 44 Neb. 566, 62 N. W. 883."

The Supreme Court, however, held the question involved to be one of general law, upon which the decisions of the state courts were not binding upon the federal courts, and reversed the decision of the Circuit Court of Appeals, which had held that a waiver existed.

In Ætna Life Ins. Co. v. Moore, supra, an applicant for insurance told the examiner his heart was affected. The examiner, however, wrote "No" in answer to the question. The question involved was whether the examiner was the agent of the company, and the policy therefore not voided by the answer as for breach of warranty. The case of German-American Life Ass'n v. Farley, 102 Ga. 720, 29 S. E. 615, was cited in support of the contention that the examiner was the agent of the company. The Supreme Court said (page 559 of 231 U. S., 34 S. Ct. 186, 191, 58 L. Ed. 356):

"To the contention that German-American Mut. Life Association v. Farley is determinative, we answer that the principle which it is cited to support is one of general jurisprudence, and therefore the case is not controlling. Kuhn v. Fairmont Coal Co., 215 U. S. 349, 30 S. Ct. 140, 54 L. Ed. 228."

In Ætna Life Ins. Co. v. Johnson, supra, a life insurance policy provided that it should not take effect until the first premium was paid. The policy also provided that no person except designated officers could waive the conditions of the policy. The question involved was whether the agent of the company could waive the payment in cash and extend the time for payment. This court, after holding that an agent could not make such waiver unless expressly authorized, said [page 825 of 13 F.(2d)]:

"While decisions of state courts may be found that are not in harmony with these principles, such decisions do not control the decisions of the courts of the United States upon questions of general jurisprudence. Carpenter v. Providence Washington Insurance Company, 16 Pet. 495, 511, 10 L. Ed. 1044; Ætna Life Ins. Co. v. Moore, 231 U. S. 543, 559, 34 S. Ct. 186, 58 L. Ed. 356."

On the question whether failure of Mr. Odegard to comply with the provisions of the bond in regard to giving notice of default was waived by Mr. Schunk, agent of the company, the Minnesota decision of Reilly v. Linden, supra, seems to hold that waiver could be made by an agent such as Mr. Schunk was, notwithstanding the provision as to waiver in the bond. What we have above said in regard to following the decisions of the state court applies here also; and the federal cases above cited, especially the Johnson Case and the Northern Assur. Company Case, would seem to be decisive against such a waiver as is contended for.

Attempt is made to distinguish these and other similar cases, on the ground that in them the conditions alleged to be waived related to matters before the taking effect of the policy and not to matters subsequent to a default or loss. Such a distinction has been made by a number of courts, including the state courts of Minnesota. Concordia Ins. Co. v. School Dist. (C. C. A.) 40 F.(2d) 379; Firemen's Ins. Co. v. Brooks (C. C. A.) 32 F.(2d) 451, 65 A. L. R. 909; Continental Ins. Co. v. Fortner (C. C. A.) 25 F.(2d) 398; Home Ins. Co. v. Hightower (C. C. A.) 22 F.(2d) 882, 62 A. L. R. 620; Community Bldg. Co. v. Maryland Cas. Co. (C. C. A.) 8 F.(2d) 678; Twin City Fire Ins. Co. v. Stockmen's Nat. Bank (C. C. A.) 261 F. 470; Reilly v. Linden, supra.

We need not enter upon a discussion whether the distinction is founded in reason or is purely arbitrary. A final analysis would probably show that the distinction is merely one as to the strictness of proof. But, however that may be, this court has held that the rules as to waiver apply to the latter class of conditions as well as to the former.

The case of Scottish Union & Nat. Ins. Co. v. Encampment Smelt Co. (C. C. A.) 166 F. 231, involved the matter of proof of loss. None was furnished. The policy contained a provision that any waiver of the conditions of the policy must be in writing and attached to the policy. Testimony was offered and received of an oral waiver by the insurance company's adjuster. In reversing a judgment for plaintiff, this court, after reciting the terms of the policy, said (page 235 of 166 F.):

"The doctrine is a reasonable one. It tends to promote certainty in the proof of transactions, and to inculcate a salutary and wholesome regard for the very terms of a contract when deliberately put in writing by competent parties. There is, therefore, no escape from the conclusion that, as Agent Lane was not shown to have any express authority to waive the condition requiring

40

proofs of loss, and as no such waiver was written upon or attached to the policies, there was in contemplation of law no waiver at all, unless the defendant company, with full knowledge of the fact that an agent had attempted to waive the condition and of what he had said and done in doing so, ratified his action. * * * Moreover, as the record is silent concerning knowledge by defendant's general officers concerning anything said or done by the agent, Lane, claimed to constitute a waiver, there is and can be no ratification."

In the Northern Assur. Company Case, supra, the court in its opinion said (page 328 of 183 U. S., 22 S. Ct. 133, 140, 46 L. Ed. 213):

"The mischief is the same whether the condition turned upon facts existing at and before the time when the contract was made, or upon facts subsequently taking place."

 There is another reason why the alleged waiver by Mr. Schunk cannot avail. The trial in the instant case was by the court under a written stipulation waiving a jury; the court found generally for the defendant, and ordered a judgment of dismissal of plaintiff's action. This general finding included a finding of every fact essential to support the judgment. Fleischmann Co. v. United States, 270 U. S. 349, 355, 46 S. Ct. 284, 70 L. Ed. 624; York v. Washburn, 129 F. 564 (C. C. A. 8); South Sioux City v. Hanchett Bond Co., 19 F.(2d) 476 (C. C. A. 8); McFarland v. Central Nat. Bank, 26 F.(2d) 890 (C. C. A. 8); Clapper v. Gamble, 28 F.(2d) 755 (C. C. A. 8). This would necessarily include a finding that there was no waiver by Mr. Schunk of notice of default. There was substantial evidence to sustain such finding. The question whether there could be a waiver by Mr. Schunk despite the provision of the bond would therefore seem to be academic.

We find it unnecessary to discuss the matter of the land contract or the other questions raised by the specification of errors.

Our conclusion is that the trial court was right in holding that plaintiff could not recover.

Notwithstanding the opposing decisions of the Supreme Court of the state of Minnesota and of other eminent courts, hereinbefore cited, for which we have the highest respect, yet we have felt bound to exercise our own independent judgment in determining the questions here involved. In so doing we have endeavored to be guided by the decisions of the Supreme Court of the United States so far as we have found ones applicable; we have carefully considered the decisions of the Minnesota Supreme Court, of other courts, and of our own court.

The decision of the Supreme Court in the Northern Assur. Company Case and the decisions of this court in the Long and Rice Cases were made long before the decisions of the Supreme Court of Minnesota in the Lakeside Company Case; and the decision of this court in the Scottish Union Ins. Company Case was made long before the decision of the Supreme Court of Minnesota in the Reilly Case.

Although it is highly desirable that harmony should exist in the decisions of the federal and state courts, yet we have not felt called upon to overrule prior decisions of this court, when, as we view them, they are based upon sound principles in the law of contracts and the law of agency, and especially when, as we also view them, they are in accord with the decisions of the Supreme Court of the United States.

The judgment is affirmed.